[Cite as *Rodriguez v. Rodriguez*, 2013-Ohio-4411.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MERCER COUNTY

EDWARD L. RODRIGUEZ,

     PLAINTIFF-APPELLEE,           CASE NO. 10-13-08

     v.

PENNY L. RODRIGUEZ,           O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Mercer County Common Pleas Court
Domestic Relations Division
Trial Court No. 12-DIV-012

Judgment Affirmed

Date of Decision:   October 7, 2013

APPEARANCES:

    *William E. Huber* for Appellant

    *Thomas Luth* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Penny L. Rodriguez, appeals the decision of the Mercer County Court of Common Pleas, Domestic Relations Division designating plaintiff-appellee, Edward L. Rodriguez, the residential parent and legal custodian of their minor children. We affirm.

{¶2} In August 1997, Penny and Edward had twin sons. (Divorce Complaint, Doc. No. 3); (Oct. 23, 2012 Tr. at 11). Penny and Edward were subsequently married on August 29, 2003. (*Id.*); (*Id.* at 4). Penny and Edward separated sometime in 2008, and the minor children continued to live with Penny. (*See* Oct. 23, 2012 Tr. at 38, 80).

{¶3} On April 24, 2012, Edward filed a complaint for divorce alleging that he had lived apart from Penny for more than a year, and they were incompatible. (*Id.*). Concerning the minor children, Edward asked the trial court to award him custody of one son, A.R., and Penny custody of the other son, J.R. (*Id.*).

{¶4} On May 11, 2012, Penny answered, admitting incompatibility and seeking custody of the minor children and child support. (Doc. No. 15).

{¶5} On July 11, 2012, Edward filed a proposed shared parenting plan, proposing that the children reside with each parent as they agree, or, alternatively, alternating weeks with each parent. (Doc. No. 32).

**{¶6}** On August 28, 2012, Penny responded to Edward's motion for shared parenting, arguing that it was not in the children's best interest. (Doc. No. 38).

**{¶7}** On October 23, 2012, the divorce complaint came on for final hearing before a magistrate. (Doc. No. 40).

**{¶8}** On November 14, 2012, the magistrate issued her decision, recommending that the parties be granted a divorce and that Edward be named the residential and custodial parent of the minor children. (Doc. No. 43). The magistrate recommended that Penny have parenting time Monday through Friday from 4:00 p.m. until 8:00 p.m., unless Edward was off work in which case Edward would keep the children. (*Id.*). The magistrate also recommended that Penny have parenting time the second weekend of every month and holidays according to Local Rule. (*Id.*).

**{¶9}** On February 8, 2013, fourteen days after the filing of the hearing transcript and as permitted by the trial court, Penny filed objections to the magistrate's decision. (Doc. Nos. 44-45, 48). Penny's objections concerned the magistrate's factual findings underpinning her recommendation to designate Edward as the residential and custodial parent of the minor children. (Doc. No. 48).

{¶10} On February 11, 2013, Edward filed a two-sentence response, asserting that the record contained sufficient evidence supporting the magistrate's decision and requesting final judgment of divorce. (Doc. No. 49).

{¶11} On March 18, 2013, the trial court overruled Penny's objections and adopted the magistrate's decision. (Doc. No. 51). On April 8, 2013, the trial court filed its final judgment entry of divorce. (Doc. No. 52).

{¶12} On April 24, 2013, Penny filed a notice of appeal. (Doc. No. 58). Penny raises two assignments of error, which we will combine for review.

**Assignment of Error No. I**

**The trial court abused its discretion in awarding custody to the Plaintiff-Appellee.**

**Assignment of Error No. II**

**The trial court failed to conduct an independent review as to the issues raised by Defendant-Appellant's objections to the Magistrate's Decision.**

{¶13} In her first assignment of error, Penny argues that the trial court abused its discretion by awarding custody of the minor children to Edward. In particular, Penny argues that the magistrate's decision adopted by the trial court contained several factual findings that were not supported by the record.

{¶14} In her second assignment of error, Penny argues that the trial court failed to conduct an independent review of the record upon filing her objections per Civ.R. 53(D)(4)(d). In particular, Penny argues that the trial court failed to

make its own factual findings, instead relying exclusively on the magistrate's factual findings, many of which were not supported by the record.

{¶15} R.C. 3109.04(B)(1) requires the trial court to consider the best interest of the children when it allocates parental rights. *Fricke v. Fricke*, 3d Dist. Allen No. 1-06-18, 2006-Ohio-4845, ¶ 7; *Kelm v. Kelm*, 92 Ohio St.3d 223, 226 (2001) (best interest is central focus in custody matters). To make its best-interest finding, a trial court must consider the nonexclusive set of factors in R.C. 3109.04(F)(1), including:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child * * *;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶16} A trial court has broad discretion in allocating parental rights, and its decision will not be disturbed absent an abuse of discretion. *Shaffer v. Shaffer*, 3d Dist. Paulding No. 11-04-22, 2005-Ohio-3884, ¶ 10, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).   An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's attitude was unreasonable,

arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶17} When objections are filed, the trial court must independently review the objected matters to decide if the magistrate properly determined the factual issues and appropriately applied the law. Civ.R. 53(D)(4)(d); *Gilleo v. Gilleo*, 3d Dist. Mercer No. 10-10-07, 2010-Ohio-5191, ¶ 46 (citations omitted); *Mackenbach v. Mackenbach*, 3d Dist. Hardin No. 6-11-03, 2012-Ohio-311, ¶ 9. While a trial court is required to independently review the record and make its own factual determinations, the trial court may rely upon the magistrate's credibility determinations. *Hendricks v. Hendricks*, 3d Dist. Van Wert No. 15-08-08, 2008-Ohio-6754, ¶ 25, citing *Osting v. Osting*, 3d Dist. Allen No. 1-03-88, 2004-Ohio-4159.

{¶18} An appellate court generally presumes regularity in the proceedings below; and, therefore, that the trial court conducted an independent analysis in reviewing the magistrate's decision. *Gilleo* at ¶ 46, quoting *Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, ¶ 47 (4th Dist.). Consequently, the party asserting that the trial court failed to conduct an independent review bears the burden of affirmatively demonstrating the trial

court's failure to perform its duty. *Id.*; *Figel v. Figel*, 3d Dist. No. Mercer No. 10-08-14, 2009-Ohio-1659, ¶ 12. When the trial court states that it conducted an independent review, we must presume that the trial court did exactly that. *Figel* at ¶ 11, citing *Betz v. Timken Mercy Med. Ctr.*, 96 Ohio App.3d 211, 216 (5th Dist.1994).

{¶19} Allocation of parental rights was the only contested issue at the final hearing. (Oct. 23, 2012 Tr. at 5). Three witnesses testified. Edward testified that he lives in Celina, Ohio, and he works for Reynolds and Reynolds, which is about a mile and a half from his home. (*Id.* at 8-9). Edward testified that Penny and he have two minor children, A.R. and J.R., twin boys born in August 1997, and Penny and he have been separated for over four years. (*Id.* at 11, 28, 38). Edward testified that he has a three-bedroom home with adequate space for the children and his mother, who is 73 years old and resides in the home. (*Id.* at 9, 19). Edward testified that Penny lives in a one-bedroom apartment, along with her grandchild. (*Id.* at 10). Edward testified that he desired for his children to live with him at least part time, but the children also seemed happy living with Penny. (*Id.* at 9-10). A.R. lived with Edward from February 2012 until school was done in June 2012, but J.R. stayed with Edward only on occasion. (*Id.* at 11). Edward testified that A.R. and his mother have a good relationship, and Edward has several other relatives living in Mercer County. (*Id.* at 12). Edward testified that

he has a good relationship with A.R. and J.R., and both children are affectionate with him, except when they are around their friends. (*Id.* at 13).

{¶20} Edward testified that he works second shift from 2:30 p.m. to 11:00 p.m. as a maintenance technician, but he usually comes home at 7:00 p.m. for lunch to ask A.R. about school and his homework. (*Id.* at 13-14, 18). Edward testified that, during the first couple of weeks when A.R. was living with him, he would make sure A.R. was ready for school, but after that, A.R. was responsible for doing that on his own. (*Id.* at 14). Edward testified that, when A.R. lived with him, he disciplined A.R. by taking away his cell phone, grounding him, and suspending his moped privileges. (*Id.* at 19). A.R. would help around the house with animals and yard work to help Edward and A.R.'s grandmother. (*Id.* at 20).

{¶21} Edward testified that A.R. left his home in June (2012) because his maternal grandmother was ill, and A.R. wanted to spend time with her before she passed away. (*Id.* at 15). Edward testified that A.R. did not return to live with him after A.R.'s maternal grandmother passed away a month after A.R. left, and Edward was not aware that he could make A.R. come back to live with him according to the court's temporary order. (*Id.*). Edward testified that he did not realize the temporary order was effective since his child support obligation was still being withheld at the full rate as if Penny had full custody. (*Id.* at 16, 42-43).

Edward testified that he continued to pay the full amount of child support, $211.70 every two weeks, during the pendency of the case. (*Id.* at 17, 37).

{¶22} Edward testified that he has taken his sons hunting and attended several of their football games. (*Id.*). He testified that he has helped with doctor appointments and carries insurance for the children. (*Id.* at 18). Penny is verbally abusive with the children, according to Edward, and engages in "cussing rampage[s]." (*Id.* at 21). Edward testified that he drinks but does not abuse alcohol, and he does not smoke, though Penny does smoke. (*Id.*). Edward testified that Penny smokes around the children because their clothes smell like smoke. (*Id.* at 22). Edward testified that he has not denied Penny access to the children, but occasionally Penny has denied him access to the children. (*Id.* at 22-23). Edward testified that, during the children's seventh and eighth-grade school years, he was called in for most of the meetings regarding the children. (*Id.* at 23). He testified that the boys are now weightlifting together, but he does not attend these sessions. (*Id.* at 24-25).

{¶23} Edward identified plaintiff's exhibits one and two as copies of A.R. and J.R.'s school progress reports, respectively. (*Id.* at 25). Edward testified that the children were residing with Penny during the time reflected on the progress reports, but A.R. was residing with him during his final trimester. (*Id.* at 26). Edward testified that A.R. had passing grades when he lived with him, but A.R. is

not currently making passing grades. (*Id.*). Plaintiff's exhibit three is A.R.'s August 30, 2012 disciplinary referral for skipping class, according to Edward. (*Id.*). Edward testified that A.R. did not skip class when he resided with him. (*Id.* at 27). Edward identified plaintiff's exhibit four as A.R.'s October 2, 2012 disciplinary referral for disrupting class and insubordination. (*Id.*). Edward testified that A.R. was residing with Penny during this time, and A.R. did not have similar misbehavior while residing with him. (*Id.*). Edward identified plaintiff's exhibit five as A.R.'s March 8, 2010 intermediate school emergency removal for A.R.'s failure to follow his behavior plan, verbal abuse, slamming doors, banging walls in time-out, and refusing to comply with staff requests. (*Id.* at 28). Edward identified plaintiff's exhibit six as A.R.'s January 6, 2010 notice of suspension for persistent and expanded misconduct, refusal to follow staff instructions, and texting in school. (*Id.*). Edward identified plaintiff's exhibit seven as A.R.'s March 27, 2009 out-of-school suspension for refusal to obey authorities, belligerent behavior, being disrespectful to teachers, inciting other students, destruction of school property, and possessing a dangerous item (push pin). (*Id.* at 28-29). Edward identified plaintiff's exhibit eight as A.R.'s May 4-8, 2009 five-day suspension for A.R.'s disrupting class, inciting other students, and refusal to follow staff directions. (*Id.* at 29). Edward identified plaintiff's exhibit nine as a

copy of A.R.'s grades for the sixth grade, which showed three "Fs," a "D+," and an "S." (*Id.* at 30).

**{¶24}** Edward testified that, when A.R. lived with him, he made sure A.R. took his hyperactivity medication daily, which appeared to help with A.R.'s conduct. (*Id.* at 31). Edward further testified that, about two years ago, A.R. was placed on juvenile court probation due to school misconduct. (*Id.* at 30-31). Edward testified that J.R. also had juvenile court involvement, but J.R. has not been in trouble since that time. (*Id.* at 31). Edward testified that A.R.'s misconduct started after he separated from Penny and while A.R. continued to live with Penny. (*Id.* at 31). Edward testified that the children love both Penny and him, and he wants them to spend time with both of them, which is why he proposed a shared-parenting plan. (*Id.* at 31-32).

**{¶25}** On cross-examination, Edward testified that he stopped smoking three years ago. (*Id.* at 38). He testified that he began paying child support "almost four years ago," though he could not recall the exact date, and he did not pay regular child support until ordered by the court. (*Id.* at 38-39). Edward testified that his nephew lived with him for two months, but his nephew moved out three weeks ago. (*Id.* at 39-40). Edward testified that, during AA classes in 2001, he learned that abusing alcohol was consuming over two beers per day. (*Id.*

at 40). He testified that he attended AA after his DUI conviction, but he currently has a valid driver's license. (*Id.* at 41).

{¶26} Edward testified that his children were freshmen in high school, but he could not recall all of their courses or all of their teachers' names, though he could recall some of the teachers. (*Id.* at 43-45). Edward testified that he helped A.R. with algebra while A.R. lived with him. (*Id.* at 46). Edward testified that he took A.R. to medical appointments, though he could not recall the name of A.R.'s prescribing physician. (*Id.* at 48-49). He testified that A.R. has been taking hyperactivity medication since the sixth or seventh grade, though A.R. has not been taking the medication over the summers. (*Id.* at 53-54, 62). Edward testified that A.R. did not feel it was necessary to be on the medication over the summer, which Edward thought was reasonable. (*Id.* at 54-56). Edward testified that he scolded A.R. for his bad school behavior and sent him to his bedroom to do his homework, but Edward felt that he had limited control over the children since the 2009 child support order granted Penny custody. (*Id.* at 59-60, 64-65). Edward testified that Penny and he did not discuss A.R.'s medical condition because "we don't talk very much period." (*Id.* at 67).

{¶27} On re-direct, Edward testified that he recalled the children's doctor was a woman, and he could drive to her office. (*Id.* at 69-70). Edward testified

that he has tried to talk with Penny about the children, but they always clash. (*Id.* at 70).

{¶28} Maria Rodriguez, Edward's mother, testified that A.R. and Edward play basketball together on the weekends, and they get along "pretty good." (*Id.* at 72). Maria testified that Edward does not get to spend as much time with J.R., but they get along well and have a good relationship. (*Id.* at 73). On cross-examination, Maria testified that she has resided with Edward since her husband passed away four and a half years ago. (*Id.* at 74). Maria testified that Edward did not have a routine visitation schedule with the children, but Edward generally saw the children once every two weeks for a full day. (*Id.* at 74-76). Maria testified that the children went to bed at 10:00 p.m., because that is the same time she goes to bed. (*Id.* at 75). Maria testified that Edward drinks three to four beers every night after work before he goes to bed. (*Id.* at 76-77).

{¶29} Thereafter, Edward rested, and the defense called Penny to the stand. (*Id.* at 78). Penny testified that she lives in a one-bedroom apartment in Celina, Ohio, and the children have resided with her for the past four years after Edward and she separated. (*Id.* at 79-80, 85). Penny testified that, other than taking A.R. to the doctor a few times, Edward has not helped raise the children. (*Id.* at 81). Penny testified that, over the past four years, Edward has seen the children "[m]aybe five to ten times," and she has refused Edward visitation because, on

multiple occasions, Edward came to visit the boys after consuming alcohol. (*Id.* at 81-82). Penny testified that Edward had a drinking problem throughout their marriage, and she is concerned for the children's safety in light of Edward's drinking problem. (*Id.* at 82). Penny testified that, when she refused to allow Edward to see the children when he was intoxicated, Edward became irritated and threatened to tell her daughter's landlord that she was staying with her. (*Id.* at 83).

{¶30} Penny testified that her one-and-a-half-year-old granddaughter lives with her, because Penny was granted temporary custody from her daughter.[1] (*Id.* at 83-84). Penny testified that her granddaughter's father returned to Mexico and does not support the child, and her daughter does not pay child support. (*Id.*). Penny testified that the boys share a bed in the apartment bedroom, she sleeps on the living room couch, and her granddaughter sleeps in a pack 'n' play. (*Id.* at 85). Penny testified that, prior to living in the one-bedroom apartment, she lived with her father, but her brother and his girlfriend recently moved in with her father, so she moved out. (*Id.* at 86). Penny testified that she looked at larger apartments but could only afford the $375 per month she pays for the one-bedroom apartment. (*Id.* at 87). Penny testified that she knows she will need a larger place to live in the future, but her apartment works for now. (*Id.* at 88).

---

[1] Although not specifically testified to at the hearing, it is clear from the testimony of both parties that this daughter is from a previous relationship. (*See* Oct. 23, 2012 Tr. at 10, 36, 83-85, 106).

{¶31} Penny testified that Edward and she do not communicate about the children because she does not get along with Edward. (*Id.*). Penny testified that Edward does not ask her about the children's health or school. (*Id.* at 88-89). According to Penny, A.R.'s behavioral problems began around the sixth grade, so she took him to Dr. Dabis who prescribed A.R. Serzone and counseling. (*Id.* at 89, 91). Penny testified that A.R. is currently seeing Dr. Reddy, and, that shortly after Edward and she separated, Aaron Braun counseled A.R. (*Id.* at 89-90). Penny testified that A.R. appeared to improve after a year of counseling and medication. (*Id.* at 91). Penny testified that Edward often picked up A.R. for misbehavior at school, though Edward did not attend school meetings when she was there. (*Id.* at 91-92). Penny testified that she set up an IEP plan for A.R., and she attempted to take A.R.'s cell phone away, but Edward would tell her she could not do that since he pays for the cell phone. (*Id.* at 92).

{¶32} Penny testified that A.R. brought no medication back home after staying with Edward over the summer, and A.R. indicated that Edward failed to get him more medication. (*Id.* at 93). A.R. is taking his medication again, according to Penny. (*Id.*). Penny testified that she let A.R. stop the medication for the rest of the summer since she was not sure whether he was taking the medication when he lived with Edward. (*Id.* at 94). Penny testified, however, that A.R. did really well over the summer without his medication, but she took him

back to Dr. Reddy at the beginning of the school year, and Dr. Reddy placed A.R. on a different medication. (*Id.* at 95). Penny testified that she makes sure A.R. takes his medication. (*Id.*).

{¶33} Penny testified that, after consulting school officials, she enrolled A.R. into alternative school to increase his grades. (*Id.* at 97). She testified that J.R.'s grades are "okay" and "could be better," but she is encouraging him to get his grades up and not drop out of school like he wants to do. (*Id.* at 98). Penny testified that sometimes A.R. has difficulty respecting authority, but A.R. shuts down and will not listen when she tries to scold him, so Penny tries to talk to A.R. about his misbehavior. (*Id.* at 99).

{¶34} Penny testified that she sews for Tuway in Rockford Monday through Friday from 7:00 a.m. to 3:30 p.m., earning $10.77 per hour. (*Id.* at 100). Penny testified that she has health insurance, but Edward covers the children, with Medicaid as a secondary insurance. (*Id.* at 101-102). Penny testified that a shared-parenting plan was not in the best interest of the children because Edward drinks too much. (*Id.* at 103). Penny testified that she does not do very much with the boys since they are very busy spending most of their time with their girlfriends. (*Id.* at 103). Penny also testified that the boys have a 10:00 p.m. curfew. (*Id.* at 104). Penny testified that she took the boys camping and canoeing this past summer, but she cannot afford vacations all the time. (*Id.*). J.R. does his

homework at school, and A.R. does not bring any homework home, according to Penny. (*Id.* at 104). When asked why A.R. does not bring home any homework, Penny testified, "[A.R.] is his own person. He thinks that he doesn't have to. He doesn't need to." (*Id.*). Penny testified that she has told A.R. he needs to do his homework and get his grades up, but A.R. refuses to do so; Penny hopes the new medication will help A.R. change this behavior. (*Id.* at 105).

{¶35} On cross-examination, Penny testified that she takes medication for high blood pressure, and she has taken depression medication since her mother passed away. (*Id.*). Penny testified that, at one point, she texted Edward and told him to pick up the children because she could no longer financially support them. (*Id.* at 106). Penny testified that she packed up the children's clothes and dropped them off at their grandmother's house. (*Id.*). Penny further testified that she has custody of her granddaughter because her daughter was in trouble for heroin. (*Id.*). Penny testified that, over the past four years, she has moved four times. (*Id.* at 107). Penny testified that Maria's testimony that Edward saw the children a couple times a month was untruthful. (*Id.* at 108). Penny testified that J.R. was doing fine in school but could be doing better. (*Id.* at 108-109). When asked whether J.R.'s "D" in American history was fine, Penny testified that "[i]t's not flunking." (*Id.* at 109). Penny testified that she did not inform Edward of doctor's

appointments, and she failed to inform Edward that A.R. was enrolled in alternative school. (*Id.* at 107, 109).

**{¶36}** Thereafter, the parties made closing arguments, and the matter was submitted for decision. (*Id.* at 109-117).

**{¶37}** The magistrate issued a ten-page decision with 61 findings of fact after reviewing the testimony and after conducting an in-camera interview with the minor children. (Nov. 14, 2012 Decision, Doc. No. 43). To reach her decision, the magistrate analyzed the applicable factors in R.C. 3109.04(F)(1). (*Id.*). Ultimately, the magistrate determined that naming Edward the residential and custodial parent was in the children's best interest. (*Id.*). The trial court reviewed the magistrate's decision in light of the record and adopted the magistrate's decision as its own. (Mar. 18, 2013 Decision on Objections, Doc. No. 51). In doing so, the trial court noted that no transcript of the in-camera hearing was requested or filed; and therefore, it could not review the contents of that hearing, but the trial court found that the magistrate was guided by the substance of that interview when making her decision. (*Id.*).

**{¶38}** Turning to Penny's second assignment of error first, the record clearly demonstrates that the trial court conducted an independent review of the record after Penny filed objections. The trial court's decision specifically states that it conducted an independent review and that "the evidence submitted at the

October 23, 2012 final hearing are [sic] consistent with the findings of fact contained in the Magistrate's Decision." (Mar. 18, 2013 Decision, Doc. No. 51). Because the trial court affirmatively stated that it conducted an independent review and Penny has not demonstrated otherwise, we must presume the trial court did exactly that. *Figel* at ¶ 11, citing *Betz*, 96 Ohio App.3d at 216.

{¶39} Penny's second assignment of error is, therefore, overruled.

{¶40} In her first assignment of error, Penny argues that the trial court's adoption of the magistrate's decision designating Edward as the residential and custodial parent amounts to an abuse of its discretion, because the magistrate's decision contained factual findings not supported by the record. We will address each of these factual findings, in turn.

{¶41} First, Penny argues that Edward's testimony that he was unaware he could require the minor children to return to his home during the summer of 2012 by virtue of the magistrate's July 9, 2012 temporary order was not credible. In support of this assertion, Penny argues that, on July 13, 2012, Edward filed a reply to her motion to modify temporary custody indicating that A.R. was residing with her but he expected A.R. to return home. Penny is correct concerning Edward's filing (Doc. No. 35); however, the magistrate did not make any finding of fact concerning Edward's knowledge of the prior temporary orders. The only related finding of fact is the magistrate's finding that The Child Support Enforcement

Agency ("CSEA") did not receive a copy of her July 2012 temporary order, and, as a result, CSEA never modified the original child support order. (Nov. 14, 2012 Decision, Doc. No. 43). Consequently, we cannot conclude that this issue heavily influenced the magistrate's decision, and the magistrate did not make any credibility determination as Penny suggests.

{¶42} Second, Penny argues that the trial court's finding that there was insufficient evidence that Edward has an alcohol problem is not supported by the record. Penny argues that she testified that Edward attempted to exercise visitation with the children several times intoxicated, that Edward had a previous DUI, and Edward admitted to currently consuming beer every night after coming home from work. Penny also points out that Maria testified that Edward drinks three to four beers each night after work. Relative to this issue, the magistrate made the following finding of facts:

29. Edward indicates that he consumes approximately two beers per day. He indicates he had an alcohol-related offense many years ago.

41. Maria advises that Edward drinks three to four beers daily. Her testimony was inconsistent with Edward's.

43. Penny's biggest concern about Edward is his alcohol consumption. She indicates that he was ordered to get counseling.

(Nov. 14, 2012 Decision, Doc. No. 43).  Thereafter, the magistrate concluded that, "Edward appears to be in good physical health.  His mental health was brought into question by Penny as a result of alleged alcoholism.  However, there was insufficient evidence to demonstrate that Edward has alcohol issues.  A mere accusation is insufficient." (*Id.*).

**{¶43}** It is clear that the magistrate weighed the evidence presented concerning Edward's consumption of alcohol, and found it insufficient to conclude that Edward had an ongoing alcohol problem.  We cannot conclude that the magistrate's weighing of the evidence, or the trial court's adoption of the same, was erroneous.  While the testimony demonstrated that Edward had a prior DUI and AA counseling around 2001, the record was inconclusive concerning Edward's current use of alcoholic beverages.  (Oct. 23, 2012 Tr. at 40-41).  The magistrate did not make any credibility determinations but appears to have given Edward's testimony concerning his current alcohol consumption more weight than Penny's testimony that Edward came to visit the children intoxicated.  Furthermore, it was not clear from Penny's testimony when these incidents occurred—whether they occurred around the time of Edward's DUI conviction (2001) or more recently.  As it relates to Maria's testimony that Edward consumes three to four beers each night after work, the trial court may have found Maria's testimony not as reliable as Edward's since Maria also testified that she goes to

bed at 10:00 p.m. each night, which is prior to the end of Edward's work shift when Edward consumed alcohol. (*Id.* at 18, 75). In light of the whole record, we are not persuaded that the trial court erred by adopting the magistrate's finding that the evidence was insufficient to conclude Edward has an alcohol problem.

{¶44} Third, Penny argues that the trial court erred by finding that she "does not appear to be in good mental or physical health" merely because she was taking medication for high blood pressure and depression. The testimony concerning Penny's physical and mental health was not limited to the fact that she is taking prescription medications. Edward testified that Penny smokes. (*Id.* at 21). Penny admitted that she has struggled with depression since her mother passed away around August 2012. (*Id.* at 15, 86, 105). Penny also admitted that she texted Edward that she could no longer afford to take care of their children, packed up their belongings, and dropped them off at their grandmother's house. (*Id.* at 105-106). Penny has temporary custody of her one-and-a-half-year-old granddaughter and testified that Penny is her sole means of support. (*Id.* at 83-84, 107). Penny has struggled financially and moved at least four times over the past several years. (*See id.* at 83-84, 87-88, 104, 106-107). All of these life circumstances are relevant to Penny's mental health; R.C. 3109.04(F)(1)(e) is not limited to *diagnosed* mental illnesses. *See Krufess v. Gibbs*, 6th Dist. Lucas No. L-09-1295, 2011-Ohio-2698, ¶ 39. In light of the record, we are not persuaded

that the magistrate or the trial court misapplied or misconstrued the evidence making its finding relative to Penny's physical and mental health.

{¶45} Fourth, Penny argues that the trial court incorrectly found that Edward "appears to have more ability to provide structure, discipline, and academic assistance." In particular, Penny argues that the record is devoid of evidence that Edward assisted either child with homework, and Edward could not recall the children's teachers or courses. This is inaccurate. Edward testified that, when he arrived home for lunch around 7:00 p.m. each night, he would ask A.R. if he had completed his homework, and Edward testified that he helped A.R. with his algebra homework. (Oct. 23, 2012 Tr. at 14, 46). While Edward could not recall all of his sons' teachers or all of the courses his children were taking, he did name several of both during his testimony, and Edward demonstrated that he was checking on the children's academic progress and dealing with A.R.'s misbehavior at school. (*Id.* at 25-30, 43-47). Edward also testified that he was implementing discipline when A.R. was residing in his home, but Edward felt like his ability to discipline was limited because the children lived with Penny. (*Id.* at 19, 59, 65). Penny, on the other hand, appeared to have no answers—beyond medication—for A.R.'s refusal to do his homework. (*Id.* at 104-105). This is especially troubling given A.R.'s poor academic performance and his desire to quit school. (*Id.* at 98); (P's Ex. 1). We are not persuaded that the trial court erred in making this finding.

{¶46} Fifth, Penny argues that the trial court erred in finding that she admitted to moving eight times over the past few years, when, in fact, she only admitted to moving four times. The trial court's finding that Penny admitted moving eight times is not supported by the record, as Penny argues. (Oct. 23, 2012 Tr. at 107). However, we are not persuaded that this erroneous factual finding would have changed the outcome of the proceedings, and therefore, is, at most, harmless error. *See, e.g., Gore v. Gore*, 6th Dist. Ottawa No. OT-08-015, 2009-Ohio-2158, ¶ 22. Whether Penny moved four or eight times over the course of the last several years still raises a concern with Penny's lack of stability. Furthermore, this was but one of many factors the trial court relied upon in making its decision.

{¶47} Sixth, Penny argues that the trial court's companionship plan is unreasonable and not supported by the record. In particular, Penny points out that the trial court concluded that "Edward's mother is not in a position to monitor and supervise the [children]" but, nevertheless, placed the children with Edward after 8:00 p.m. nightly when only Edward's mother is home. We find no abuse of discretion with the trial court's companionship plan.

{¶48} In crafting the plan, the magistrate attempted to maximize both parents' companionship with the minor children. Penny works weekdays from 7:00 a.m. to 3:30 p.m., and Edward works weekdays from 3:00 p.m. to 11:00 p.m.

(Oct. 23, 2012 Tr. at 18, 100). Therefore, the magistrate placed the children with Penny for four hours after she came home from work and with Edward the remainder of the time, mostly when Edward was at home from work. The children are with Maria for only three hours while Edward is working each night, and both Edward and Maria testified that A.R. listened to Maria while A.R. was in the home. (*Id.* at 18-20, 75). Maria also testified that A.R. went to bed at 10:00 p.m.—the same time she went to bed. (*Id.* at 75). Penny's complaint about Maria's purported inability to supervise the children is questionable given her minimal supervision of the children. (*See id.* at 103) ("Q: What type of things do you do with your two boys? PENNY: "I don't do a whole lot with them because they are very busy. They have girlfriends. They go to movies. They're with their girlfriends most of the time."). Finally, it should also be noted that the magistrate asked that Edward attempt to change his work schedule, if possible, to daylight hours. (Nov. 14, 2012 Decision, Doc. No. 43). Upon review of the record, we are not persuaded that the trial court's adoption of the magistrate's companionship schedule was unreasonable.

{¶49} In summary, we are not persuaded that the trial court abused its discretion by adopting the magistrate's decision. Many of the magistrate's findings were based upon weighing the evidence, and the findings, except one, were supported by the record. As in most custody cases, both parents here have

less-than-ideal circumstances; nevertheless, the trial court must determine what placement is in the children's best interest. We are not persuaded that the trial court abused its discretion by designating Edward the custodial and residential parent of the minor children. Significantly, and as noted by the magistrate, the minor children are teenage boys who lack discipline—particularly A.R.— something the magistrate hoped Edward, as their father, could begin to change.

{¶50} Penny's first assignment of error is, therefore, overruled.

{¶51} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**