[Cite as *Davidson v. Hodge*, 2023-Ohio-1638.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ANGELA DAVIDSON, | : | APPEAL NO. C-220241 |
| | | TRIAL NO. F20-573X |
| Appellant, | : | |
| vs. | : | |
| MARK HODGE, | : | *O P I N I O N*. |
| Appellee. | : | |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 17, 2023

*Law Offices of Nicholas A. Kulik, LLC*, and *Nicholas A. Kulik,* for Appellant,

*Eric L. Anderson,* for Appellee.

**Bock, Judge.**

**{¶1}**    Appellant Angela Davidson ("Mother") challenges the juvenile court's order granting legal custody of her two children, K.H. and L.H., to appellee Mark Hodge ("Father").[1] In two assignments of error, she contests the juvenile court's findings regarding two of the statutory factors guiding its analysis of the children's best interest under R.C. 3109.04(F)(1). But because the juvenile court's findings are supported by competent and credible evidence, we affirm its decision.

## I.    Facts and Procedure

**{¶2}**    Mother and Father are the biological parents of K.H. and L.H. While Mother and Father were never married, the four lived as a family in Ohio.

**{¶3}**    In June 2020, Mother and Father were drinking and "got into a heated argument" about relocating the family to Hawaii. The night culminated with Father throwing a piece of furniture through a window. Following that argument, Mother moved into her mother's ("Maternal Grandmother") home in Kentucky for a brief period. Father moved for a preliminary injunction in the juvenile court to prevent the children's relocation. Days later, Mother moved to Hawaii with the children and Maternal Grandmother.

**{¶4}**    Months before she moved the children to Hawaii with Maternal Grandmother, Mother had purchased four one-way airplane tickets to Hawaii. And one month before the move, Mother signed a lease for an apartment in Hawaii with a move-in date of June 15. Father's name was not on the lease.

---

[1] We take this opportunity to remind all parties that App.R. 16(A)(6) and (D) require a statement of facts with appropriate references to the record. And we have explained that "[t]o receive consideration on appeal, trial-court errors must be argued and supported by citation to the record." *Berger v. Wade*, 1st Dist. Hamilton No. C-120863, 2014-Ohio-1262, ¶ 25. While this court could have refused to consider Mother's arguments based solely on her failure to provide appropriate citations to the record, in the interest of fairness, we decide this case on the merits.

{¶5} When Mother returned to Cincinnati with the children for the holidays in December 2020, Father unsuccessfully petitioned the juvenile court for emergency custody of the children. But weeks later, the magistrate granted Father interim custody of the children and ordered their return to Ohio. The children lived with Father beginning in February 2021 and continued, through remote access, attending school in Hawaii until the end of the school year.

{¶6} At a June 2021 custody hearing, the magistrate heard testimony from Father, Mother, and their friends, family members, and neighbors. In addition, the parties introduced pictures, videos, receipts, insurance cards, bank statements, text messages, discovery responses, pay stubs, Mother's lease, and a Niche.com evaluation of K.H.'s elementary school in Hawaii. In January 2022, the magistrate ordered that the children be placed in Mother's legal custody. Father objected. The juvenile court held oral arguments in April 2022 and the parties entered additional evidence into the record, including supplemental testimony from Mother and Father. The following month, the juvenile court held an in-camera interview with 11-year-old K.H.

{¶7} The juvenile court set aside the magistrate's order as "not supported by the evidence and not in accordance with the law." The juvenile court considered the best-interest factors set forth under R.C. 3109.04(F)(1) in a thorough analysis of the facts of the case. While the juvenile court made clear that both parents are bonded with the children and "appropriate and loving parents," the juvenile court found that several statutory factors weighed in favor of granting Father custody of the children.

{¶8} First, K.H. wanted to remain in Ohio with Father. *See* R.C. 3109.04(F)(1)(b). Relevant here, the court considered the children's relationships and found that 1.) the children's friends and family remain in Ohio, 2.) the children have no significant social connections in Hawaii, and 3.) the distance between the parents

would hinder the children's relationship with the noncustodial parent. *See* R.C. 3109.04(F)(1)(c). The juvenile court found that the children were well adjusted to their home, school, and community in Ohio, and questioned whether the children had adjusted to life in Hawaii due, in part, to the Covid-related closures and precautions. *See* R.C. 3109.04(F)(1)(d). The juvenile court found that the children required no adjustment to remain in Ohio but found that "the children would require an adjustment to no longer living in the home they always had in Ohio as well as no longer living with Father." In addition, the juvenile court found that Mother relocated to Hawaii, in part, because of its beauty and it was better suited to what she was looking for in life. *See* R.C. 3109.04(F)(1)(j).

{¶9}    Ultimately, the juvenile court concluded that remaining in Ohio with Father was in the best interest of the children because Father offered stability and the least amount of disruption to the children's lives. The juvenile court awarded Father legal custody of the children and granted Mother parenting time during the summer.

## II.    Law and Analysis

{¶10} Mother challenges the juvenile court's custody award in two assignments of error. Specifically, she argues that the juvenile court abused its discretion when it concluded that awarding custody of the children to Father was in the children's best interest. In support of her argument, she disputes the juvenile court's analysis of two statutory factors in R.C. 3109.04(F).

{¶11} Custody decisions "are some of the most difficult and agonizing" that a juvenile court must make, particularly when the decision concerns two loving parents, as is the case here. *See Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). The juvenile court exercises broad discretion when allocating parental rights and responsibilities in a custody dispute. *Owens v. Owens*, 1st Dist. Hamilton No. C-

4

210488, 2022-Ohio-3450, ¶ 31, citing *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 41, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Our review is highly deferential in light of the juvenile court's discretionary authority, the nature of the proceeding, and the intimate knowledge gained by observing the witnesses and parties. *Id.*, quoting *Cwik* at ¶ 41, quoting *Miller* at 74. Because the juvenile court has "the best opportunity to view the demeanor, attitude, and credibility of each witness," we presume that its findings are correct. *Bohannon v. Lewis*, 1st Dist. Hamilton Nos. C-210316 and C-210332, 2022-Ohio-2398, ¶ 15, quoting *Davis* at 418.

{¶12} We therefore review the juvenile court's decision for an abuse of discretion. *Id.* at ¶ 14. A juvenile court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). While we review for an abuse of discretion, we may not simply substitute our judgment for the juvenile court's even if we would have reached a different conclusion regarding the children's best interest. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶13} In Ohio, a child's best interest is paramount when a court determines custody matters and allocates parental rights and responsibilities. *See* R.C. 3109.04(A)(1). To determine the best interest of the children, the juvenile court must consider a nonexhaustive list of statutory factors in R.C. 3109.04(F)(1). R.C. 3109.04(B)(1).

{¶14} Mother does not contest that the juvenile court carefully considered, and thoroughly analyzed, the relevant statutory factors. Instead, she contests two of the juvenile court's findings under two best-interest factors in R.C. 3109.04(F)(1). In Mother's view, the juvenile court's analysis of the children's interactions and

5

interrelationships under R.C. 3109.04(F)(1)(c) is unreasonable and lacks evidentiary support. Next, she disputes the juvenile court's conclusion under R.C. 3109.04(F)(1)(d) that the children were not adjusted to their home, school, and community in Hawaii.

Children's Interactions and Interrelationships

{¶15}  The juvenile court must consider the "child[ren]'s interaction[s] and interrelationship[s] with [their] parents, siblings, and any other person who may significantly affect the[ir] best interest." R.C. 3109.04(F)(1)(c). The juvenile court made several factual findings in its lengthy analysis of the children's interactions and interrelationships. Mother does not dispute that the children have numerous family members and friends in Ohio, where they have lived for most of their lives. Rather, Mother challenges three findings by the juvenile court, which suggest that the children's interactions and interrelationships are stronger in Ohio than in Hawaii. To that end, she claims the juvenile court's findings lack evidentiary support and are the product of an unsound reasoning process.

{¶16}  First, Mother disputes the juvenile court's determination that "[b]oth parents were actively involved in raising the children." The court explained that while Mother took on a greater share of the childcare responsibilities, "Father was the primary financial provider for the family and Mother had more time available to care for the children at times." Mother disagrees and asserts that she was the primary caretaker and at times the sole caretaker, as well as the primary financial provider for the children. But long-time family friends testified that Father has always been a hands-on and active parent to the children, who adore him. Long-time neighbors in Ohio described Father as a patient and good parent and recalled consistently seeing

him with the children in the yard. And according to the children's paternal grandmother, Father was actively involved in the children's care.

{¶17} Father stated that Mother "always took care of the medical appointments" and carried the children's health insurance. And Mother testified that she was responsible for morning and nighttime childcare after K.H.'s birth. But she also testified that Father assisted with childcare at times and was the sole financial provider following L.H.'s birth. And according to Mother's testimony, Father covered childcare costs after Mother returned to work and would assist in dropping L.H. off at daycare. Likewise, Maternal Grandmother testified that Father transported the children to her house in Northern Kentucky when Mother worked. Even Mother's long-time friend testified that Father is "really good, hands-on with [the children]." In sum, the evidence makes clear that both parents provided for the care of the children. Therefore, this finding is supported by competent and credible evidence.

{¶18} Second, Mother disputes the juvenile court's finding that "[t]he children do not have any known social connections in Hawaii that are of significance, though they have some familiarity with some of Mother's friends." She claims that the children started to develop meaningful relationships in Hawaii. Yet, Mother testified that K.H. was frustrated that there were no girls in their Hawaii neighborhood to play with and "unfortunately didn't have the opportunity to--she did have a good friend in school but didn't get an opportunity to fully interact with them because of the pandemic." And we note that K.H. and L.H. might possibly develop lasting friendships and relationships in Hawaii. But numerous witnesses described their many existing friendships in Ohio, including K.H. in her in-camera interview. More to the point, "[the] child[ren]'s best interest for allocating rights and responsibilities is based on

7

present circumstances, not on what possibly may happen in the future." *Seibert v. Seibert*, 66 Ohio App.3d 342, 584 N.E.2d 41 (12th Dist.1990).

{¶19} Third, Mother disagrees with the juvenile court's conclusion that, "[I]f the parties remain where they presently are, the children will not be able to maintain as close of a relationship with the other parent, regardless of who receives custody, due to the physical distance involved." Again, the evidence supports the juvenile court's finding. The children's paternal grandmother testified that "there was such a small window of opportunity to connect" with the children when they were living in Hawaii due to the time change. Likewise, Father described how the geographic and time distances limited his ability to communicate with the children in Hawaii.

{¶20} All told, the juvenile court's findings and analysis of the children's interrelationships and interactions under R.C. 3109.04(F)(1)(c) are supported by competent and credible evidence in the record. Thus, the juvenile court's findings do not constitute an abuse of discretion. We overrule Mother's first assignment of error.

<u>The Children Were Adjusted To Life In Ohio</u>

{¶21} In her second assignment of error, Mother disagrees with the juvenile court's findings regarding the children's adjustments to their home, school, and community under R.C. 3109.04(F)(1)(d). The juvenile court analyzed the children's experiences in both Ohio and Hawaii and concluded that remaining in Ohio required less adjustment for the children. Mother disagrees.

{¶22} Beginning with the children's adjustment to school, the juvenile court found that K.H. was well adjusted to school and the community in Ohio, and that L.H. was not school aged when he lived in Hawaii. In particular, the juvenile court found that while K.H. performed better at her Hawaiian elementary school, "[T]here were questions related to the quality of education she was receiving and if she was being

challenged equally when comparing the Ohio and Hawaii schools." Mother claims that there was no evidence of the quality of curriculum or instruction in Hawaii. But in her in-camera interview, K.H. informed the juvenile court that she was "relearning the basics of like first grade and second grade," specifically money and counting. And K.H. preferred attending a more challenging school in Ohio. Still more, Mother described K.H.'s elementary school in Hawaii as "a bit lower rated" and "not as good as the school that they were enrolled in [Ohio]." Mother's own testimony refutes her claim that the juvenile court's findings lack evidentiary support.

{¶23} Turning to the children's adjustment to the community, the juvenile court found that, in Ohio, the children "routinely played with a network of friends" and participated in extracurricular activities. In contrast, the juvenile court found that the children "have not adjusted to their school and community in Hawaii." The juvenile court acknowledged that while the children "did not require an adjustment to living with Mother and Maternal Grandmother," the children *would* have to adjust to no longer living with Father in Ohio and "appeared to miss certain people that were no longer able to be a routine part of their lives while they were in Hawaii." Once again, we need to look no further than Mother's own testimony, who stated that K.H. missed Father when she was in Hawaii. And K.H.'s paternal grandmother described her as "sad and withdrawn" in Hawaii.

{¶24} While Mother acknowledges that relocating to Hawaii would require some adjustment by the children, she argues that the court failed to consider the children's adjustment upon returning to Ohio without Mother. But the juvenile court recognized that living in Ohio with Father without Mother and Maternal Grandmother would be an adjustment for the children but noted that the children "appear to be doing well" following their return to Ohio.

**{¶25}** Finally, Mother contends that the juvenile court ignored the possible benefits of living in Hawaii. Specifically, she emphasizes the importance of experiencing diverse environments and cultures during the children's formative years. Diversity and cultural experiences may assist with the development of a child's character. But we cannot ignore the countervailing facts and statutory factors supporting the juvenile court's conclusion that granting Father custody of the children was in their best interest. Plus, no one statutory factor controls the juvenile court's best-interest determination. *In re L.L.,* 1st Dist. Hamilton No. C-200058, 2020-Ohio-5609, ¶ 8. And we have explained that "the weight to be given to any factor lies within the trial court's discretion." *Id.* Therefore, we find no abuse of discretion and overrule Mother's second assignment of error.

## III.   Conclusion

**{¶26}** We overrule Mother's two assignments of error and affirm the juvenile court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.