**[Cite as *In re G.W.*, 2024-Ohio-1551.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: G.W.               :        APPEAL NO. C-230268
                                   TRIAL NO. F17-28X

                          :

                          :        *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 24, 2024

*Charles H. Bartlett, Jr.,* for Appellant Father,

*The Helbling Law Firm, LLC,* and *John J. Helbling*, for Appellee Mother.

**Bock, Presiding Judge.**

**{¶1}** This case arises from a custody dispute between appellant ("Father") and appellee ("Mother") over their minor daughter, G.W. On appeal, Father argues that the juvenile court erred by denying his motion to hold Mother in contempt for violating a court-approved shared-parenting plan and by awarding Mother custody of G.W. Because the record supports the juvenile court's determinations that Mother substantially complied with the terms of the shared-parenting plan and that awarding Mother custody of G.W. was in the child's best interest, we affirm the juvenile court's judgment and overrule Father's assignments of error.

## I. Facts and Procedure

### A. *The shared-parenting plan and the parties' motions*

**{¶2}** In March 2018, the juvenile court approved an agreed shared-parenting plan ("SPP") under which the court granted Mother and Father equal legal and residential custody of G.W. The SPP provided, "[e]ach parent shall be entitled to speak with or otherwise communicate with their minor child at all reasonable times." It required Mother and Father to mediate "any major disagreement between them relating to the minor child" before any court hearing and to "consult as to the appropriate school placement for the minor child." Finally, the SPP stated, "[n]either parent shall enroll their child in any school or non-school extracurricular activities and/or sports without the agreement of the other party. * * * Neither parent shall enroll the child in more than one non-agreed upon activity."

**{¶3}** In October 2019, Mother moved to terminate the SPP and sought sole custody of G.W. Her motion additionally requested that the court hold Father in contempt for failing to follow the SPP. Likewise, in December 2019, Father moved to

2

terminate the SPP and sought legal and residential custody of G.W. In 2020, Father petitioned the court to find Mother in contempt for failing to follow the SPP and moved for sole custody of G.W.

### B. Magistrate hearing

**{¶4}** After the court approved the SPP, G.W. split time between Mother and Father. Mother had lived in Colerain Township for nine years with her other daughter, Z.T., who was born in 2013. Father lived in St. Bernard when he signed the SPP. He moved to Harrison, Ohio, with his wife, their infant child, and his wife's son from a prior marriage. Father has since moved to Indiana.[1]

**{¶5}** Regarding the logistics of G.W.'s medical care, for a time, Mother provided health insurance for G.W. through her service with the Ohio National Guard. Father testified that on multiple occasions, he asked Mother to provide him with a copy of her insurance card, but she never delivered. Mother explained that her insurance information was contained on her military identification card, which she could not copy per military policy. Mother testified that whichever parent was with G.W. at the time a medical appointment needed to be scheduled would make her medical appointments and then tell the other parent about the appointment.

**{¶6}** While both parents initially agreed that G.W. would attend preschool, after the onset of the Covid-19 pandemic, Father objected to G.W. attending preschool. He cited his concern for his mother and father, both of whom had health issues. As a result of Father's objections, G.W. did not attend preschool during the 2020-2021

---

[1] At the hearing, Father testified that he lived in Harrison and though he wanted to move to Indiana, he had not done so. But both the magistrate's and juvenile court's decisions state that Father had moved to Indiana. It is unclear from the record if or when Father moved to Indiana. But because Father does not challenge this finding and the juvenile court expressly gave Father's move to Indiana no weight, this issue is immaterial to our review.

school year. When the 2021-2022 school year came around, Father again objected to G.W. attending preschool. Mother, however, enrolled G.W. in a preschool in her district. (Mother also contacted a preschool in Harrison, Ohio, near Father, but the preschool was not accepting new students.) During that school year, Mother took G.W. to preschool during her parenting time. Father did not take G.W. to preschool during his parenting time.

{¶7} From 2019 through 2022, Mother signed G.W. up for several extracurricular activities, to which Father objected, partly due to his concerns with the Covid-19 pandemic. In 2019, Mother asked Father if he would consent to G.W. participating in gymnastics. While Father objected, Mother, believing that the SPP allowed either parent to enroll G.W. in one extracurricular at a time over the objection of the other parent, signed G.W. up for gymnastics. In 2020, G.W. quit gymnastics and Mother enrolled her in ballet. In 2021, Mother asked Father to consent to G.W. participating in T-ball as well as ballet. But because Father objected, Mother did not register G.W. in T-ball. In 2022, G.W. quit ballet and resumed gymnastics. Mother again asked Father if he would consent to G.W. participating in T-ball and Father again objected. Though Father objected to T-ball, Mother testified that she signed G.W. up for T-ball because she believed that T-ball would not overlap with cheerleading, a new activity for which Mother had registered G.W. As it turned out, T-ball overlapped with gymnastics and T-ball games fell on one of Father's days with G.W.

### C. The magistrate's and juvenile court's decisions

{¶8} Following the hearing, the magistrate granted both parties' request to terminate the SPP, denied both parties' motions for contempt, and granted Mother sole custody of G.W.

4

{¶9} Regarding custody, the magistrate noted that R.C. 3109.04(F)(1) sets forth the factors to consider in determining the child's best interest and found that R.C. 3109.04(F)(1)(d), "the child's adjustment to the child's home, school, and community," was most applicable and weighed in favor of Mother. And the magistrate found that neither Mother's nor Father's actions rose to the level of contempt. Father objected to the magistrate's decision.

{¶10} In April 2023, the juvenile court overruled Father's objections and adopted the magistrate's decision. The juvenile court, like the magistrate, found that R.C. 3109.04(F)(1)(d) weighed in favor of Mother, noting that G.W. had spent nearly a full school year at the school in Mother's district. The juvenile court found that Mother substantially complied with the SPP and denied both parties' contempt motions. The court terminated the SPP, awarded Mother legal custody of G.W., and awarded the parties equal parenting time.

## II. LAW AND ANALYSIS

{¶11} Father raises two assignments of error: The trial court erred by (1) failing to hold Mother in contempt, and (2) awarding Mother custody of G.W.

### A. *The trial court correctly denied Father's contempt motion*

{¶12} In asserting that the trial court erroneously denied his contempt motion, Father argues that Mother testified that she failed to give Father a copy of her insurance card despite multiple requests, did not consult with Father before making medical and dental appointments, allowed G.W. to sleep in the same bed as Mother, interfered with Father's phone calls to G.W., and failed to use mediation to resolve disagreements with Father.

**{¶13}** An appellate court reviews a trial court's ruling on a contempt motion for an abuse of discretion. *Morrison v. Walters*, 1st Dist. Hamilton Nos. C-220643 and C-220644, 2023-Ohio-2887, ¶ 19, citing *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. A court abuses its discretion when its judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A court has broad discretion to determine whether a party violated its orders and what conduct constitutes contempt. *In re Ayer*, 119 Ohio App.3d 571, 576, 695 N.E.2d 1180 (1st Dist.1997).

**{¶14}** Parents subject to a custody order may seek a contempt finding when the other party interferes or fails to comply with the order. R.C. 2705.031(B)(2). A moving party establishes a prima facie case of civil contempt by proving, by clear and convincing evidence, the nonmoving party's failure to comply with an existing order. *Morrison* at ¶ 19, quoting *Wolf* at ¶ 4. Once the movant establishes a prima facie case of contempt, the burden shifts to the nonmovant to establish a defense for the noncompliance. *Wolf* at ¶ 4. A party's substantial compliance with a court order can serve as a defense to a contempt finding. *See State v. Ritter*, 1st Dist. Butler No. 78-05-0048, 1980 Ohio App. LEXIS 10200, 1 (Oct. 1, 1980); *see also Norman v. Bethany Music*, 4th Dist. Highland No. 20CA07, 2021-Ohio-824, ¶ 14. A technical violation of a court's order does not necessarily require a contempt finding. *Norman* at ¶ 13.

**{¶15}** The record supports the juvenile court's finding that Mother substantially complied with its order. Regarding the health-insurance card, the juvenile court credited Mother's explanation that Mother could not provide Father with a copy of her insurance card due to military policy prohibiting her from copying the card. Moreover, Mother testified that she attempted to provide Father with her

insurance account numbers and made herself available for Father to call her so that she could give medical providers her insurance information over the phone. As to Mother's failure to mediate, Father never moved to compel mediation. Further, Mother and Father, with their attorneys, met several times to attempt to resolve disputes. Next, regarding Mother's enrolling G.W. in preschool, she agreed to forego preschool for the 2020-2021 year and attempted to consult with Father for the 2021-2022 school year. Notably, the SPP did not expressly require that the parties agree to G.W.'s school placement—instead, the plan required the parties to "consult." Finally, there was conflicting evidence involving whether Mother interfered with Father's telephone calls with G.W. and the court was entitled to believe Mother's testimony over Father's.

{¶16} The juvenile court, which was in the best position to judge the witnesses' credibility and weigh the evidence, determined that Mother was not in contempt of the SPP. The trial court was well within its discretion to deny Father's motion for contempt. We overrule Father's first assignment of error.

### B. *The juvenile court's custody order was not an abuse of discretion*

{¶17} Father argues in his second assignment of error that the juvenile court erred in determining that awarding Mother custody of G.W. was in G.W.'s best interest. First, Father argues that the court rewarded Mother for contumacious behavior by placing weight on G.W.'s adjustment to her school when Mother enrolled G.W. over Father's objections. Second, Father argues that the juvenile court failed to consider which parent is "more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights" as required by R.C. 3109.04(F)(1)(f).

7

{¶18} An appellate court reviews a juvenile court's custody determination for an abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Custody decisions are among the "most difficult and agonizing decisions" that juvenile courts make. *Bohannon v. Lewis*, 1st Dist. Hamilton Nos. C-210316 and C-210332, 2022-Ohio-2398, ¶ 14. Juvenile courts enjoy broad discretion in crafting those decisions because the knowledge gained through observing the witnesses "cannot be conveyed to a reviewing court by a printed record." *Miller* at 74, citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). But that discretion is "not absolute; the court must follow the procedures described in R.C. 3109.04 when making custody decisions." *Siegel v. Siegel*, 1st Dist. Hamilton No. C-140296, 2015-Ohio-1710, ¶ 7, citing *Miller* at 74.

{¶19} When terminating a shared-parenting plan, the juvenile court is required to allocate parental rights and responsibilities "as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d). When allocating parental rights, the juvenile court must consider the best interest of the child based on "all relevant factors" including those listed under R.C. 3109.04(F)(1) and (2). Relevant here, those factors include:

(d) The child's adjustment to the child's home, school, and community;

* * *

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

* * *

8

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court.

R.C. 3109.04(F)(1).

{¶20} The juvenile court expressly set out the required factors under R.C. 3109.04(F)(1) and (2), applied those factors, and found that it was in G.W.'s best interest to award custody to Mother. The juvenile court discussed the relevant factors and explained why certain factors did not apply and why other factors did not weigh in favor of either parent.

{¶21} The juvenile court found that, under R.C. 3109.04(F)(1)(d), G.W.'s adjustment to her school in Mother's district weighed in favor of granting custody to Mother. Though Father argues this finding rewards Mother for her contumacious behavior in enrolling G.W. in school over his objections, the juvenile court correctly found that Mother's conduct did not constitute contempt. Further, R.C. 3109.04(F)'s focus is on G.W.'s best interest, not whether either parent should be "rewarded" with custody. R.C. 3109.04(F)(1)(d) required the juvenile court to consider only whether G.W. had adjusted well to her school and community. The juvenile court, noting that G.W. had attended the school in Mother's district for almost a year, found that G.W. had adjusted well to the school. That finding was supported by the record.

{¶22} While Father asserts that G.W. could have adjusted just as well to a school in his district, G.W. was never enrolled in his district, so the juvenile court could not have found G.W. adjusted well to a school in Father's district. In determining what is in a child's best interest, juvenile courts consider "the present circumstances, not * * * what possibly may happen in the future" or what might have hypothetically

happened if events had transpired differently. *Davidson v. Hodge*, 1st Dist. Hamilton No. C-220241, 2023-Ohio-1638, ¶ 18.

{**¶23**} Finally, Father argues that the juvenile court failed to consider which parent is "more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights" as required by R.C. 3109.04(F)(1)(f). Mother argues that Father failed to raise this argument in his objections to the magistrate's decision and therefore waived it. Father failed to address the waiver issue and did not develop a plain-error argument.

{**¶24**} "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Juv.R. 40(D)(3)(b)(iv). All objections to a magistrate's decision must be "specific and state with particularity the grounds for objection." Juv.R. 40(D)(3)(b)(ii). "When an appellant fails to develop a plain-error analysis, the appellate court need not create one on the appellant's behalf and may decline to reach the merits of the claim." *State v. Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, ¶ 52, citing *State v. Chapman*, 9th Dist. Summit No. 28626, 2018-Ohio-1142, ¶ 23. Here, Father's objections and supplemental objections did not argue that the magistrate failed to consider R.C. 3109.04(F)(1)(f). Because Father did not raise this argument below and has not developed a plain-error analysis, this court declines to reach the merits of this argument.

{**¶25**} The juvenile court weighed the evidence, considered the relevant factors under R.C. 3109.04(F), and determined that awarding custody to Mother was in G.W.'s best interest. That decision was supported by competent credible evidence.

While there was competing evidence about what was in G.W.'s best interest, the juvenile court was in the best position to weigh that evidence and decide what was in G.W.'s best interest. We hold that the juvenile court's awarding Mother custody of G.W. was not an abuse of discretion and we overrule Father's second assignment of error.

### III.    CONCLUSION

**{¶26}** We overrule Father's assignments of error and affirm the juvenile court's judgment.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.