[Cite as *Moon v. Moon*, 2024-Ohio-2428.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jennifer Moon, | : | |
| Plaintiff-Appellant, | : | No. 23AP-553 |
| | | (C.P.C. No. 21DR-3665) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Christopher Moon, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on June 25, 2024

**On brief:** *Woodford Sathappan McGee*, *Co. LPA*, *Natalie V. McGee*, and *Katherine Ebraheim*, for appellant. **Argued:** *Natalie V. McGee.*

**On brief:** *Winkler Legal*, *LLC*, and *Dirken D. Winkler*, for appellee.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Jennifer Moon, appeals from a judgment entry/decree of divorce of the Franklin County Court of Common Pleas, Division of Domestic Relations. She challenges the trial court's division and allocation of marital assets and liabilities between her and defendant-appellee, Christopher Moon. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## I. Facts and Procedural History

{¶ 2} Jennifer and Christopher were married on April 13, 2001, and they have no children as issue of the marriage. On October 19, 2021, Jennifer filed a complaint for divorce. In April 2023, the parties agreed on June 29, 2019, as the de facto termination

date of the marriage. The matter came before the court for a one-day trial in June 2023. On August 22, 2023, the trial court issued the divorce decree, which, among other things, divided and allocated the parties' marital assets and liabilities. As part of that division and allocation, the trial court awarded the marital residence to Christopher, and it ordered him to pay to Jennifer an equalization amount based on their equity in the marital residence and the marital credit card debt. The trial court also directed the parties to sell the timeshare they acquired during the marriage.

{¶ 3} Jennifer timely appeals.

## II. Assignments of Error

{¶ 4} Jennifer assigns the following three assignments of error for our review:

> [I.] The trial court erred and abused its discretion to the material prejudice of Plaintiff in crediting Defendant for payments made to marital debt after the de facto termination date.

> [II.] The trial court erred and abused its discretion to the material prejudice of Plaintiff in awarding the Defendant the marital residence.

> [III.] The trial court erred and abused its discretion to the material prejudice of Plaintiff in awarding both parties the timeshare and crediting Defendant payments made on the timeshare after the de facto termination date.

## III. Discussion

{¶ 5} Jennifer's assignments of error each relate to the trial court's division of marital assets and liabilities. In divorce proceedings, the trial court must classify property as marital or separate, determine the value of the property, and divide the marital and separate property between the spouses. R.C. 3105.171. Marital debt must also be divided. *See Hall v. Bricker*, 10th Dist. No. 23AP-140, 2024-Ohio-1339, ¶ 111 ("Although R.C. 3105.171 does not explicitly address the division of marital debt, it is nonetheless subject to allocation as part of the trial court's distribution of marital property."). The marital property and debt must be divided equally or, if an equal division is inequitable, equitably. R.C. 3105.171(B); *Gallo v. Gallo*, 10th Dist. No. 14AP-179, 2015-Ohio-982, ¶ 42, citing R.C. 3105.171(C)(1); *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5. A trial court

has broad discretion in the allocation of marital assets and debt, and an appellate court will not disturb a trial court's judgment absent an abuse of discretion. *Gallo* at ¶ 42. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 6} We first discuss together Jennifer's first and second assignments of error. Jennifer's first assignment of error alleges the trial court erred in reducing the amount of Christopher's equalization payment based on payments he made on credit card debt after the de facto termination date. In her second assignment of error, Jennifer contends the trial court erred in awarding the marital residence to Christopher. These assignments of error have merit.

{¶ 7} The trial court awarded the marital residence to Christopher, and it ordered an equalization payment based on the marital equity in the residence, adjusted by the parties' credit card debt and Christopher's payments on that debt. The parties stipulated the value of the marital residence to be $179,000.00 as of the de facto termination date, June 29, 2019. As of that date, the property was encumbered by a mortgage with a balance of $44,990.40, and, thus, there was $134,000.60 in equity in the property. Based on the trial court's award of the marital residence to Christopher, and this equity calculation, it preliminarily ordered Christopher to pay $67,000.30 to Jennifer for her share of that equity. The trial court then reduced the equalization payment amount by Jennifer's share of the parties' credit card debt, and by half of Christopher's payments on the credit cards since the de facto marriage termination date. Based on these reductions, the trial court set the equalization payment amount at $26,892.16. The trial court ordered Christopher to make partial payments to Jennifer at specified amounts and intervals, with the final payment occurring by March 5, 2027, and no prepayment penalty for early full payment.

{¶ 8} As to the trial court's award of the marital residence to Christopher, we find the trial court abused its discretion in requiring Jennifer to finance Christopher's retention of that property. The trial court's statement that Christopher would not be penalized for paying the full equalization amount before the March 5, 2027 deadline is inconsistent with the absence of any interest being charged to Christopher for paying the equalization amount over a period of years. Instead of requiring Christopher to refinance the marital residence with a third party within a reasonable period of time, and then pay Jennifer the full

equalization amount, or alternatively ordering the immediate sale of the residence, the trial court permitted him to make payments to her for nearly three and one-half years to fulfill that obligation. Considering the time value of money—the value of a dollar today is worth more than the value of a dollar in the future—Jennifer will receive less from Christopher the later in time the final payment is made. And Christopher would have no economic benefit in paying in full before the deadline. Thus, Jennifer receives no benefit, and in fact receives financially less (accounting for the time value of money), the longer it takes Christopher to pay the full equalization amount. The trial court decision does not account for this circumstance, other than to indicate there would be no penalty to Christopher for paying the full amount early. And the trial court provided no explanation for setting forth an extended payment plan as a means for Christopher to keep the marital residence. Thus, although it was generally within the trial court's discretion to award the marital residence to Christopher, we find it was an abuse of discretion for the trial court, without any justifying explanation, to effectively require Jennifer, to her detriment, to finance Christopher's retention of the marital residence.

{¶ 9} Next, we address the trial court's reduction of the equalization payment amount based on both the credit card debt existing shortly before trial and Christopher's payments on that debt.[1] Jennifer generally argues the trial court erred in reducing the amount of this required payment by her share of that credit card debt. Noting the trial court used the de facto termination date for valuing the marital residence, Jennifer asserts the trial court should have divided and allocated the marital credit card debt as of the de facto termination date and not the amount of this debt existing shortly before the trial in 2023. In support of her argument, Jennifer cites the principle that " 'a trial court should consistently apply the same set of dates when evaluating marital property that is subject to division and distribution in a divorce proceeding.' " (Further quotation and citation omitted.) *Kramer v. Kramer*, 10th Dist. No. 18AP-933, 2019-Ohio-4865, ¶ 34, quoting *Kachmar v. Kachmar*, 7th Dist. No. 08 MA 90, 2010-Ohio-1311, ¶ 47. But even if the trial

---

[1] During the marriage, Christopher and Jennifer accumulated significant credit card debt on multiple credit cards, including a Barclays credit card. The debt on that credit card was associated with their purchase of a timeshare, and is therefore separately discussed below in connection with Jennifer's third assignment of error.

court had evenly divided and allocated the marital credit card debt as of the de facto termination date, both parties allocated portion of that debt would have accrued interest after the de facto termination date, just as that debt accrued interest without being so divided. Thus, it would be reasonable for the trial court to allocate the marital credit card debt, and the interest accrued on that debt after the de facto termination date, equally between the parties.

{¶ 10} Jennifer also argues the trial court erred in reducing the required equalization payment amount by Christopher's payments made on the credit card debt after the de facto termination date. We are unpersuaded because a trial court is within its discretion to "award a credit to the party who uses his or her own separate funds to make mortgage or other loan payments while the divorce is pending." *Shattuck v. Shattuck*, 153 Ohio App.3d 622, 2003-Ohio-4230, ¶ 25 (7th Dist.), citing Turner, *Equitable Distribution of Property*, Section 6.25, 441 (2d Ed.1994). It is undisputed that Christopher used his own separate funds to make payments on the credit card debt after the de facto termination date but before the final hearing. Thus, it was not an abuse of discretion for the trial court to award a credit to Christopher for his payments on the credit card debt. This does not end our analysis, however, of the reductions relating to the credit card debt.

{¶ 11} Although the trial court generally did not abuse its discretion in either dividing and allocating the credit card debt existing shortly before the trial, or awarding a credit to Christopher for payments he made on that debt after the de facto termination date, the trial court erred in not sufficiently accounting for the fact that, after the de facto termination date, Christopher made charges on those credit cards. The trial court appropriately excluded those increases in principal on the credit cards from any reduction in the equalization amount Christopher owed to Jennifer. But those increases would have corresponded to additional accrued interest charges, and that interest would have constituted a portion of the balance of the debt existing shortly before the trial. Consequently, when Christopher made payments on those credit cards, after the de facto termination date, it necessarily was for interest accruing on both preexisting marital debt and separate debt Christopher added.

{¶ 12} The trial court, without acknowledging this circumstance, reduced the equalization amount by half of the total amount of payments Christopher made after the de

facto termination date. This means the trial court reduced the amount Christopher owed to Jennifer by half of the amount he paid on the interest accruing on the principal he added after the de facto termination date. The trial court also divided the credit card debt existing as of March 2023. Because a portion of that increase in debt would have been due to Christopher's charges made on those credit cards after the de facto termination date, in effect, the trial court allocated some amount of debt to Jennifer that should have been attributed to interest on Christopher's separate debt. We recognize the inherent difficulty in calculating interest accrued on principal added before versus after the de facto termination date. But the inclusion of Christopher's separate debt in these reductions provided a real economic benefit to him that the trial court did not acknowledge in its division and allocation of the marital property and debt. On remand, the trial court must consider this circumstance in its division and allocation of marital assets and liabilities.

{¶ 13} For these reasons, we sustain Jennifer's first and second assignments of error.

{¶ 14} Jennifer's third assignment of error alleges the trial court erred in awarding both parties the timeshare acquired during their marriage and giving Christopher credit for payments he made on the timeshare after the de facto marriage termination date. She argues their joint retention of the timeshare keeps them financially entangled. This assignment of error is not well-taken.

{¶ 15} In March 2019, the parties purchased a timeshare with Wyndham Vacation Resorts, Inc. for $23,374.00. They made a down payment of $4,669.80 and financed the remainder through Wyndham, with a ten-year loan, accruing 15.49 percent interest per annum. In conjunction with this purchase, they obtained a credit card with Barclays. As of the de facto termination date, the balance on the Barclays credit card was $3,042.62. And as of April 10, 2023, the balance on this credit card was $15,151.97, even with Christopher having made payments, after the de facto termination date, totaling $13,197.68. This credit card was exclusively used for the required monthly payments on the ten-year loan for the Wyndham timeshare, which, as of April 21, 2023, had a payoff balance of $14,770.93. On that date, Wyndham sent a "Timeshare Option to Repurchase Agreement" to Christopher. (Pl.'s Ex. 6.) This agreement provided Wyndham the option to repurchase the parties' timeshare for $23,900.00. The trial court noted the existence of this repurchase

agreement, and it directed the parties to keep the timeshare listed for sale and to equally split any net proceeds.[2]   Thus, Jennifer's assertion that the trial court awarded the timeshare to both parties, keeping them as joint owners indefinitely, is inaccurate.

{¶ 16} Further, we reject Jennifer's challenge to the trial court awarding credit to Christopher for payments that were made on the timeshare after the de facto date.  Jennifer argues the trial court should have awarded the timeshare to Christopher and the debt associated with that property.  The debt associated with the timeshare included not only the ten-year loan financed with Wyndham but also the Barclays credit card that was automatically used to make the required monthly payments on that loan.  After the de facto termination date, and using non-marital funds, Christopher made payments on this card totaling $13,197.68.  The trial court reduced the amount of the required equalization payment to Jennifer by half of $13,197.68, or $6,598.84.  This was a reasonable approach as the debt and interest on the Barclays credit card continued to accumulate after the de facto termination date, and the sole purpose of this card was to make payments on the ten-year Wyndham loan used to purchase the timeshare, a marital asset.  Thus, it was not unreasonable for the trial court to reduce the equalization payment from Christopher to Jennifer based on his payments on the Barclays credit card after the de facto termination date.

{¶ 17} For these reasons, we overrule Jennifer's third assignment of error.

**IV. Disposition**

{¶ 18} Having sustained Jennifer's first and second assignments of error, and overruled her third assignment of error, we affirm in part, and reverse in part, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

DORRIAN and BOGGS, JJ., concur.

---

[2] Christopher's appellate counsel has represented to this court that the timeshare in fact has been sold.