[Cite as *Snider v. Snider*, 2025-Ohio-77.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

HOLLY SNIDER,

        PLAINTIFF-APPELLEE,

    v.

JAMEISON SNIDER,

        DEFENDANT-APPELLANT.

CASE NO. 14-24-10

O P I N I O N

Appeal from Union County Common Pleas Court
Domestic Relations Division
Trial Court No. 22 DR 0122

**Judgment Affirmed**

**Date of Decision:  January 13, 2025**

APPEARANCES:

    *John H. Cousins IV* for Appellant

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Jameison Snider ("Jameison"), appeals the January 5, 2024 judgment entry of the Union County Court of Common Pleas, Domestic Relations Division, granting divorce from plaintiff-appellee, Holly Snider ("Holly"). On appeal, Jameison challenges the trial court's allocation of parental rights and responsibilities, child support determination, and asset allocation. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} Jameison and Holly married on May 16, 2009, and had one child together, K.S. Holly filed a complaint for divorce on July 22, 2022.[1] Jameison filed his answer along with a counterclaim for divorce on August 18, 2022.

{¶3} On September 13, 2022, the trial court issued temporary orders, including designating Holly as K.S.'s residential parent and legal custodian and directing Jameison to pay $400.00 per month in child support. The trial court set Jameison's income at $75,000 per year as he failed to provide sufficient documentation to support a lower income.

{¶4} On October 11, 2022, Jameison requested a reduction in child support, claiming that his income was $31,001.00. Following a hearing on December 7, 2022, the trial court's magistrate determined that Jameison's financial records were

---

[1] Holly filed an amended complaint for divorce on February 22, 2023.

insufficient to establish his income. Specifically, the trial court's magistrate noted that Jameison failed to provide dates for business expenses recorded in his business checking account, which he used for both business and personal expenditures. The trial court's magistrate ordered Jameison to amend his profit and loss statements to include specific dates for each expense. Following a subsequent hearing on December 19, 2022, the trial court's magistrate again denied Jameison's request to modify child support. The trial court's magistrate found that Jameison's revised financial records lacked sufficient evidence to support his claimed business expenses. The trial court's magistrate questioned the credibility of Jameison's claims about his business expenses, as he failed to provide supporting documentation, such as contracts or purchase orders, to substantiate his expenses.

{¶5} A guardian ad litem ("GAL") was appointed on November 8, 2022. The GAL submitted reports on February 13 and May 8, 2023. In the latter report, the GAL recommended that the parties enter into a shared parenting agreement or, alternatively, that the trial court designate Holly as the residential parent and legal custodian of K.S.

{¶6} On February 21, 2023, Jameison filed motions in the trial court requesting that it order Holly to undergo drug and alcohol testing and that it order a psychological evaluation for both parties and K.S. On May 2, 2023, the trial court's magistrate denied Jameison's motions, finding that they were untimely and lacked

sufficient justification. After reviewing the magistrate's decision, trial court denied Jameison's motion to set aside that decision on May 15, 2023.

**{¶7}** During trial, Jameison filed a motion for shared parenting on July 5, 2023 and proposed shared parenting plan on October 16, 2023.

**{¶8}** Following hearings on May 16, July 6, and September 12, 2023, the trial court's magistrate issued a decision on October 24, 2023 denying Jameison's request for shared parenting and awarding residential and legal custody of K.S. to Holly. The magistrate also divided the marital assets, ordering Jameison to pay Holly $3,888.50 to equalize the distribution, and imposed a child support obligation on Jameison of $717.26 per month. On November 15, 2023, the trial court's magistrate filed a nunc pro tunc order to incorporate the court's balance sheet, which had been inadvertently omitted from the original decision.

**{¶9}** Jameison filed his objections to the magistrate's decision on November 11, 2023. On December 26, 2023, after independently assessing the magistrate's decision, the trial court overruled Jameison's objections to the magistrate's decision.

**{¶10}** The trial court issued a final divorce decree on January 5, 2024.

**{¶11}** Jameison filed his notice of appeal on January 16, 2024. He raises three assignments of error for our review.[2]

---

[2] Holly failed to file an appellee's brief in this case. "Under those circumstances, App.R. 18(C) provides that we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." *Prater v. Mullins*, 2013-Ohio-3981, ¶ 4, fn. 1 (3d Dist.).

**First Assignment of Error**

**The Trial Court Erred, Abused Its Discretion, And Ruled Against The Manifest Weight Of The Evidence By Allocating Parental Rights And Responsibilities; By Awarding Sole Custody To Mother Instead Of Father; By Disregarding Father's Proposed Shared Parenting Plan; By Refusing To Order A Psychological Assessment Or Custody Evaluation; By Relying On The Severely Deficient Reports And Testimony Of The GAL; By Ignoring The Testimony Of The Child's Counselor, And By Ignoring The Recording Of Mother Threatening To Harm Herself, Father, And The Child (Admitted As Exhibit R). (R. 99, 104, 107).**

{¶12} In his first assignment of error, Jameison argues that the trial court abused its discretion by denying his motion for shared parenting and by designating Holly as K.S.'s residential parent and legal custodian.

*Standard of Review*

{¶13} "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 2014-Ohio-2577, ¶ 26 (3d Dist.), quoting *Walker v. Walker*, 2013-Ohio-1496, ¶ 46 (3d Dist.). "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."'" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 2008-Ohio-5538, ¶ 25 (3d Dist.) and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46. An abuse of discretion

suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶14} "Revised Code 3109.04 governs the trial court's award of parental rights and responsibilities." *August v. August*, 2014-Ohio-3986, ¶ 22 (3d Dist.). That statute "provides for options available to the trial court when allocating parental rights and responsibilities: 'primarily to one of the parents' (R.C. 3109.04(A)(1)), or 'to both parents' (R.C. 3109.04(A)(2))." *Id.*

{¶15} "Under R.C. 3109.04(D)(1)(a)(iii), where, as here, 'only one parent makes a request' for shared parenting and the trial court determines that shared parenting is not in the best interest of the child, the trial court may deny a party's motion requesting shared parenting and proceed as if the request for shared parenting had not been made." *Id.* When the trial court concludes that a shared parenting plan is not in the best interest of the child,

> "the [trial] court, in a manner consistent with the best interest of the child[], shall allocate the parental rights and responsibilities for the care of the child[] primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the child[], including, but not limited to, the responsibility to provide support for the child[] and the right of the parent who is not the residential parent to have continuing contact with the child[]."

*Walker* at ¶ 48, quoting R.C. 3109.04(A)(1).

**{¶16}** "The statute requires that in allocating the parental rights and responsibilities, the court '"shall take into account that which would be in the best interest of the child[].""" *August* at ¶ 22, quoting *Self v. Turner*, 2006-Ohio-6197, ¶ 6 (3d Dist.), quoting R.C. 3109.04(B)(1). R.C. 3109.04(F)(1) "spell[s] out ten factors that the court shall consider to determine the best interest of the child and five more factors to determine whether shared parenting is in the child's best interest." *August* at ¶ 23, citing R.C. 3109.04(F)(1) and (2). "Any additional relevant factors shall be considered as well." *Id.*

> "In determining the best interest of a child [under R.C. 3109.04], whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

*Id.*, quoting R.C. 3109.04(F)(1).

"In determining whether shared parenting is in the best interest of the child[], the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the

factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."

*Id.*, quoting R.C. 3109.04(F)(2).

**{¶17}** "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Krill*, 2014-Ohio-2577, at ¶ 29 (3d Dist.), quoting *Brammer v. Brammer*, 2013-Ohio-2843, ¶ 41 (3d Dist.). "A trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody." *Brammer* at ¶ 41. "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Krill* at ¶ 29. "[A]bsent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant 'best interest' factors

listed in R.C. 3109.04(F)(1)." *Brammer v. Meachem*, 2011-Ohio-519, ¶ 32 (3d Dist.).

**{¶18}** "Additionally, we note that the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Walton v. Walton*, 2011-Ohio-2847, ¶ 20 (3d Dist.). "Therefore, '"[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."'" *Id.*, quoting *Clark v. Clark*, 2007-Ohio-5771, ¶ 23 (3d Dist.), quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984). Importantly, "[t]he best interest determination focuses on the child, not the parent." *B.S. v. M.M.*, 2021-Ohio-176, ¶ 29 (5th Dist.).

**{¶19}** In the October 24, 2023 magistrate's decision, the trial court's magistrate considered the factors under R.C. 3109.04 when reaching the conclusion that shared parenting is not in K.S.'s best interest and that it is in K.S.'s best interest that Holly have residential and legal custody of K.S. Assessing K.S.'s best interests, the trial court's magistrate found the following factors under R.C. 3109.04(F)(1): R.C. 3109.04(F)(1)(a), even though Jameison requested shared parenting, "[e]ach of the parents [requested] to be the residential/custodial parent of [K.S.]"; R.C. 3109.04(F)(1)(b), while no in camera interview was requested or conducted, the GAL expressed K.S.'s wishes; R.C. 3109.04(F)(1)(c), notwithstanding one incident,

"parenting time with [Jameison] since then has been without incident" and K.S. is bonded with each parent; R.C. 3109.04(F)(1)(d), K.S. is well adjusted to the school he is currently attending; R.C. 3109.04(F)(1)(e), contrary to the concerns raised by Jameison, the court did not "perceive any such current mental health concerns with [Holly]" and "[t]here are no concerns about the physical health of either parent"; R.C. 3109.04(F)(1)(f), "[e]ven though [Holly] admitted she denied [Jameison] parenting time after the 'cemetery' incident, there does not appear to be any record of either parent ignoring or failing to follow current orders" but Jameison's conduct during the proceedings "convince[d] the Court that [he] wants to make all decisions without input from [Holly]"; R.C. 3109.04(F)(1)(g), Jameison had "a support arrearage of $2,540.81"; R.C. 3109.04(F)(1)(h), neither party has been convicted of any crime related to child abuse or neglect; R.C. 3109.04(F)(1)(i), aside from the "cemetery" incident, neither party deprived the other parent's right to parenting time; and R.C. 3109.04(F)(1)(j), neither party expressed an intent to establish a residence outside this state. (Doc. No. 99).

{¶20} Moreover, the trial court's magistrate considered the factors under R.C. 3109.04(F)(2) in concluding that shared parenting was not in K.S.'s best interest and that it was in K.S.'s best interest that Holly have residential and legal custody of K.S. Importantly, the trial court's magistrate found that Jameison and Holly lacked the ability to cooperate and make joint decisions and that Jameison had relocated to Worthington, Franklin County, Ohio, to live with his girlfriend.

*See* R.C. 3109.04(F)(2)(a), (d). The trial court's magistrate also considered the GAL's recommendation, which favored shared parenting but suggested Holly as the primary parent if shared parenting was not feasible. *See* R.C. 3109.04(F)(2)(e).

{¶21} In its December 26, 2023 decision overruling Jameison's objections to the trial court's magistrate's decision relating to parental rights and responsibilities, the trial court (after an independent analysis of the factors under R.C. 3109.04) also concluded that shared parenting is not in K.S.'s best interest and that it is in K.S.'s best interest that Holly have residential and legal custody of K.S. Importantly, the trial court found that Jameison's shared parenting plan "was not a serious attempt of proposing to actually share the parenting of [K.S.] between the parents. Rather it is a demand for almost total custody, under the guise of shared parenting." (Doc. No. 104). The trial court also rejected Jameison's objection to the magistrate's decision denying his request for Holly to undergo a psychological evaluation because it "was not sufficiently supported by the evidence." (*Id.*). Addressing the factors under R.C. 3109.04(F)(2), the trial court emphasized the evidence that Jameison and Holly are unable to cooperate and make decisions jointly. *See* R.C. 3109.04(F)(2)(a). Moreover, the trial court determined "that the GAL's investigation, when considered with all other evidence, was not significantly deficient, and was properly accepted as evidence." (Doc. No. 104). *See* R.C. 3109.04(F)(2)(e).

{¶22} Challenging the trial court's decision relating to parental rights and responsibilities, Jameison argues that the trial court abused its discretion by concluding that shared parenting is not in K.S.'s best interest and that it is in K.S.'s best interest that Holly have residential and legal custody of K.S. Jameison asserts that the trial court's custody decision, based on the factors under R.C. 3109.04(F), is not supported by a substantial amount of competent, credible evidence. Specifically, Jameison challenges the trial court's findings regarding specific factors outlined in R.C. 3109.04(F): R.C. 3109.04(F)(1)(a), the trial court erroneously suggested that Holly desired shared parenting when, in fact, Jameison was the only party to file a proposed shared parenting plan; R.C. 3109.04(F)(1)(d), the trial court's finding regarding K.S.'s adjustment to school lacked evidentiary support; and R.C. 3109.04(F)(1)(e), the trial court improperly denied his motion for a psychological evaluation of Holly. Additionally, Jameison argues that the trial court failed to properly consider the GAL's report and recommendation and Holly's recorded statements. *See* R.C. 3109.04(F)(2)(b), (e).

{¶23} Based on our review of the record, we conclude that the trial court properly considered the best-interest factors challenged by Jameison and conclude that the trial court's findings are supported by a substantial amount of competent, credible evidence. Importantly, even though the trial court placed greater emphasis on certain factors under R.C. 3109.04(F)(1) and (2)—namely, the factor relating to

the parents' inability to cooperate—it was permitted to do so. *See Krill*, 2014-Ohio-2577, at ¶ 63 (3d Dist.).

**{¶24}** To begin with, Jameison argues that the trial court erroneously disregarded his request for shared parenting. However, we disagree. Instead, the trial court measured the request of each parent against the evidence presented at the relevant hearings and determined that shared parenting is not in K.S.'s best interest.

**{¶25}** Relevantly, "'"[s]uccessful shared parenting requires at least two things. One is a strong commitment to cooperate. The other is a capacity to engage in the cooperation required."'" *Johnson v. Johnson*, 2010-Ohio-1283, ¶ 19 (12th Dist.), quoting *Kauza v. Kauza*, 2008-Ohio-5668, ¶ 27 (12th Dist.), quoting *Meyer v. Anderson*, 2002-Ohio-2782, ¶ 25 (2d Dist.). Likewise, "'[w]hile no factor [under] R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting.'" *Salameh v. Salameh*, 2019-Ohio-5390, ¶ 111 (5th Dist.), quoting *Seng v. Seng*, 2008-Ohio-6758, ¶ 21 (12th Dist.). "When there is a lack of cooperation, shared parenting may not necessarily be in a child's best interest." *Johnson* at ¶ 19.

**{¶26}** Decisively, the trial court's magistrate considered Jameison's proposal but determined that shared parenting was not in best interest of K.S., primarily due to the parties' inability to cooperate. *Compare Michael v. Michael*, 2021-Ohio-992, ¶ 14-15 (9th Dist.) ("Upon review of Father's proposed shared parenting plan and

-14-

the best-interest factors outlined above, the magistrate determined that shared parenting would not be in the best interests of the children.").

**{¶27}** Overruling Jameison's objection to the magistrate's decision denying his request for shared parenting, the trial court determined that Jameison's proposed shared parenting plan did not align with the principles of shared parenting. Instead, the trial court concluded that Jameison's plan constituted a demand for nearly exclusive custody, disguised as a shared parenting arrangement. Aside from the issues with the shared parenting plan itself, the trial court determined that shared parenting was not in K.S.'s best interest based on the evidence presented. Specifically, the trial court emphasized the parents' inability to cooperate and make joint decisions as a key factor in determining that shared parenting was not in K.S.'s best interest. Jameison's unilateral parenting decisions and expressed desire for sole custody further supported this conclusion. Thus, Jameison's argument that the trial court did not consider his request for shared parenting is without merit.

**{¶28}** Moreover, Jameison asserts on appeal that the trial court's finding regarding K.S.'s adjustment to school lacks support from a substantial amount competent, credible evidence. However, Jameison did not raise this argument in his objections to the magistrate's decision and did not develop a plain-error argument on appeal.

**{¶29}** "'Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion . . . unless the

party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).'" *In re G.W.*, 2024-Ohio-1551, ¶ 23 (1st Dist.), quoting Juv.R. 40(D)(3)(b)(iv). "All objections to a magistrate's decision must be 'specific and state with particularity the grounds for objection.'" *Id.*, quoting Juv.R. 40(D)(3)(b)(ii). "'When an appellant fails to develop a plain-error analysis, the appellate court need not create one on the appellant's behalf and may decline to reach the merits of the claim.'" *Id.*, quoting *State v. Warth*, 2023-Ohio-3641, ¶ 52 (1st Dist.).

**{¶30}** Because Jameison did not challenge the magistrate's consideration of R.C. 3109.04(F)(1)(d) in his objections to the magistrate's decision or raise a plain-error argument on appeal, he has waived his argument. Even so, the trial court's finding under R.C. 3109.04(F)(1)(d) is supported by a substantial amount of competent, credible evidence. Indeed, Holly testified to K.S.'s school attendance and provided testimony that it is in his best interest to continue attending that school.

**{¶31}** Next, Jameison contends that the trial court erred by failing to adequately consider Holly's mental health under R.C. 3109.04(F)(1)(e) because it denied his request for a psychological evaluation of Holly. Likewise, Jameison contends that the trial court failed to adequately consider R.C. 3109.04(F)(2)(b) by disregarding Defendant's Exhibit R, which depicts recorded statements made by Holly in 2019. In sum, Jameison argues that the trial court should have ordered a psychological evaluation given Holly's history of self-harm, hospitalizations, and threats to herself and others.

**{¶32}** In the October 24, 2023 decision, the trial court's magistrate acknowledged Jameison's belief that Holly may have mental health issues. However, the magistrate disagreed with this assessment, finding that it did not perceive any current mental health issues affecting Holly. In support of this determination, the magistrate cited Holly's admission that she had experienced difficulties in the past, which she attributed to her abusive relationship with Jameison. In its decision overruling Jameison's objection to the magistrate's decision denying his request for Holly to undergo a psychological assessment, the trial court, considering the factual record and the parties' conduct, determined that Jameison's request for a psychological evaluation lacked sufficient evidentiary support.

**{¶33}** Although Jameison extensively outlined the perceived deficiencies that he attributed to Holly, the trial court correctly concluded that none of the evidence submitted by Jameison regarding Holly's mental health documented her *current* mental health status in a manner that would render her unfit to parent K.S. *Compare King v. King*, 2012-Ohio-5219, ¶ 22 (9th Dist.) (resolving that "Mr. King relie[d] heavily on incidents that occurred prior to the divorce decree and [did] not point to any evidence that Ms. Craig's *current* mental and physical health would make her unable to parent"). Importantly, Holly was confronted with the evidence outlined by Jameison (including Defendant's Exhibit R), and the magistrate and trial court found her testimony to be credible. *See Sovern v. Sovern*, 2016-Ohio-7542, ¶

37-39 (3d Dist.) (noting that it is within the trial court's discretion to assess credibility and weigh R.C. 3109.04(F)(1)(e) accordingly). Relevantly, Holly acknowledged her past mental health struggles and testified that she sought therapy and had been prescribed medication to address her issues several years prior to filing the divorce complaint. Moreover, Holly attributed her past mental health issues to postpartum depression and the emotional and mental abuse inflicted by Jameison. Critically, Holly testified that she experienced depression and anxiety throughout her relationship with Jameison but she has not encountered any such issues since their separation.

{¶34} Consequently, the record supports the trial court's assessment of Holly's mental health. *See Rodriguez v. Rodriguez*, 2013-Ohio-4411, ¶ 44 (3d Dist.) ("In light of the record, we are not persuaded that the magistrate or the trial court misapplied or misconstrued the evidence making its finding relative to Penny's physical and mental health."). As a result, our review of the record reveals that the trial court's consideration of R.C. 3109.04(F)(1)(e) and (F)(2)(b) are supported by a substantial amount of competent, credible evidence. *See Sovern* at ¶ 39.

{¶35} Finally, Jameison challenges the trial court's consideration of the GAL's testimony and recommendation. Specifically, Jameison asserts that the GAL's investigation was deficient because he did not comply with the Rules of Superintendence. Jameison identifies the following deficiencies in the GAL's investigation: (1) failure to observe K.S. with either parent or other significant

individuals in K.S.'s life; (2) failure to interview K.S.'s counselor; (3) failure to obtain or review Holly's mental health records; and (4) failure to request that the trial court order Holly to undergo a psychological evaluation.

**{¶36}** "'Article IV, Section 5(A)(1) of the Ohio Constitution provides the Supreme Court of Ohio with general superintendence over all the courts in the state.'" *In re A.A.*, 2024-Ohio-224, ¶ 45 (10th Dist.), quoting *In re A.S.*, 2022-Ohio-1861, ¶ 51 (10th Dist.). "'In accordance with this authority, the Supreme Court originated the Rules of Superintendence for the Courts of Ohio, including the courts of common pleas and the divisions thereof.'" *Id.*, quoting *In re A.S.* at ¶ 51. "The Rules of Superintendence contain certain specified provisions that apply in domestic relations and juvenile court cases where the court appoints a GAL." *Id.*

**{¶37}** Specifically, "[t]he Rules of Superintendence provide a non-exhaustive list of duties GALs are required to perform." *Id.* at ¶ 46. Sup.R. 48.03(D) provides, in its relevant part that, "[u]nless specifically relieved by the court," the GAL shall "[o]bserve the child with each parent, foster parent, guardian or physical custodian"; "[i]nterview the parties . . . and other significant individuals who may have relevant knowledge regarding the issues of the case"; "[i]nterview relevant . . . medical and mental health providers . . . and obtain copies of relevant records"; and "[r]equest that the court order psychological evaluations, mental health substance abuse assessments, or other evaluations or tests of the parties as

the guardian ad litem deems necessary or helpful to the court." Sup.R. 48.03(D)(2), (6), (7), (10).

**{¶38}** Importantly, "'"[s]ignificant changes were made" in the January 1, 2021 amendments to the Rules of Superintendence governing GALs, "including the deletion of the GAL's discretion to not perform duties 'unless impracticable or inadvisable' and to 'make reasonable efforts' to perform the duties."'" *In re A.A.* at ¶ 48, quoting *In re A.S.* at ¶ 51, fn. 10, quoting *In re D.E.*, 2021-Ohio-524, ¶ 73, fn. 15 (10th Dist.). "'"[T]he amended rules, in addition to imposing "different and additional requirements," now also "provide the GAL shall perform the duties '[u]nless specifically relieved by the court,' thereby giving the discretion to the court, not the GAL, to determine when it is impracticable or inadvisable to not perform duties and whether the GAL has engaged in reasonable efforts to perform the duties."'" *Id.*, quoting *In re A.S.* at ¶ 51, fn. 10, quoting *In re D.E.* at ¶ 73, fn. 15.

**{¶39}** "However, it is important to emphasize that Sup.R. 48 *does not create substantive rights*, even if a GAL fails to comply with the rule." (Emphasis in original.) *In re H.M.*, 2019-Ohio-3721, ¶ 81 (3d Dist.). "Moreover, '[b]ecause Sup.R. 48 is a general guideline that lacks the force of statutory law, noncompliance with Sup.R. 48(D) is not grounds for automatic exclusion of a [GAL's] report, testimony, or recommendation.'" *In re A.A.* at ¶ 50, quoting *In re R.P.*, 2021-Ohio-4065, ¶ 31 (10th Dist.). "'"They are not the equivalent of rules of procedure and

have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants."'" *In re H.M.* at ¶ 81, quoting *Allen v. Allen*, 2010-Ohio-475, ¶ 31 (11th Dist.), quoting *State v. Gettys*, 49 Ohio App.2d 241, 243 (3d Dist. 1976).

**{¶40}** Instead, a court "'may exercise its discretion to consider that evidence.'" *In re A.A.* at ¶ 50, quoting *In re R.P.* at ¶ 31. That is, "[a]s the trier of fact, the trial court may take into account any deficiencies in the [GAL's] performance when assigning weight to the guardian's testimony and opinions." *In re R.P.* at ¶ 31, citing *In re K.W.*, 2018-Ohio-1933, ¶ 102 (4th Dist.) ("The trial court, as the fact-finder, is permitted to assign weight to the [GAL's] testimony and recommendation and could choose to believe or disbelieve it.") and *In re T.C.*, 2015-Ohio-3665, ¶ 23 (6th Dist.) ("[T]he trial court, as trier of fact, is permitted to assign weight to the [GAL's] testimony and recommendation and to consider it in the context of all the evidence before the court."). "Therefore, a GAL's failure to comply with his or her duties under SupR. 48(D) is not basis for reversal unless a parent demonstrates prejudice." *In re H.M.* at ¶ 81.

**{¶41}** Here, Jameison raised his concerns with the GAL's performance at the relevant hearings and thoroughly examined the GAL about his investigation. *See In re A.A.* at ¶ 55 (determining that, even though the GAL did not observe A.A. with his parents, "such was brought to the attention of the court through the GAL's direct

examination" so "the trial court was aware of the alleged deficiency in the GAL's investigation and exercised its discretion when deciding whether to consider the GAL's report"). Pertinently, the trial court's magistrate observed that the GAL testified that he had no reason to demand a psychological evaluation of Holly, and that the recording of Holly making inappropriate and rash statements was too outdated to hold significant weight. The trial court's magistrate further observed that the GAL testified to multiple attempts to contact K.S.'s counselor, which were met with no response except for a single voicemail.

{¶42} In overruling Jameison's objection to the magistrate's decision regarding the consideration of the GAL's report and recommendation, the trial court determined that the alleged deficiencies in the GAL's investigation were minor and that the GAL's investigation, when considered in conjunction with all other evidence, was not significantly deficient and was properly accepted as evidence. Of relevant note, the trial court observed that the GAL testified to his unsuccessful attempts to contact K.S.'s counselor and his belief that a psychological evaluation of Holly was unnecessary. The trial court further noted that Jameison could have subpoenaed any relevant records and provided them to the GAL.

{¶43} Consequently, notwithstanding the shortcomings in the GAL's investigation as outlined under the Rules of Superintendence, the trial court did not abuse its discretion by admitting and considering the GAL's report and recommendation. *See In re H.M.*, 2019-Ohio-3721, at ¶ 89 (3d Dist.) (concluding

that the trial court did not err by admitting the GAL's report and recommendation even though the "GALs violate[d] their duties under Ohio Rule of Superintendence 48" since "the Superintendence Rules do not create substantive rights").

{¶44} Moreover, Jameison did not demonstrate how he was prejudiced by the shortcomings in the GAL's investigation. Instead, as acknowledged by the trial court, the GAL's report and recommendation was merely one factor among many that it considered in its overall determination. *Compare In re R.P.*, 2021-Ohio-4065, at ¶ 33 (10th Dist.) (concluding that the trial court did not abuse its discretion by admitting and considering the GAL's testimony "[d]espite shortcomings in the [GAL's] investigation" because it "could factor into its consideration the extent of the [GAL's] field work when weighing the [GAL's] testimony and opinion"). Therefore, Jameison's argument regarding the trial court's consideration of the GAL's report and recommendation lacks merit.

{¶45} In summation, Jameison contends that the trial court abused its discretion by affording greater weight and credibility to the evidence supporting Holly as the residential parent and legal custodian of K.S. In other words, Jameison is requesting that this court reevaluate and reweigh the trial court's assessment of that evidence. However, it is not our role to substitute our judgment for that of the trial court. Rather, from our perspective, the trial court's magistrate and the trial court carefully considered the GAL's report, as well the evidence presented at the

relevant hearings, and weighed that evidence against the factors outlined in R.C. 3109.04.

{¶46} Accordingly, we conclude that it was not unreasonable, arbitrary, or unconscionable for the trial court's magistrate or the trial court to conclude that it was in K.S.'s best interest that Holly have residential and legal custody of K.S. Therefore, the trial court did not abuse its discretion denying Jameison's request for shared parenting and by designating Holly as the residential parent and legal custodian of K.S.

{¶47} Jameison's first assignment of error is overruled.

**Second Assignment of Error**

**The Trial Court Erred, Abused Its Discretion, And Acted Against The Manifest Weight Of The Evidence In Determining Child Support And By Imputing Income of $55,000 To Father. (R. 99, 104, 107.)**

{¶48} In his second assignment of error, Jameison argues that the trial court improperly calculated his child support obligation. In particular, Jameison contends that the trial court erred by imputing $55,000.00 in income to him for purposes of calculating his child support obligation.

*Standard of Review*

{¶49} It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. *Long v. Long*, 2005-Ohio-

4052, ¶ 8 (3d Dist.). As we previously stated, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶50}** "Revised Code Chapter 3119 governs issues of child support in cases of divorce." *Siferd v. Siferd*, 2017-Ohio-8624, ¶ 14 (3d Dist.). "Before computing child support, the trial court must determine each parent's income." *Clark v. Clark*, 2015-Ohio-3818, ¶ 29 (3d Dist.). *See also Getreu v. Getreu*, 2021-Ohio-2761, ¶ 48 (5th Dist.) ("When issuing an order of child support, the trial court must calculate the amount of support 'in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119.'"), quoting R.C. 3119.02. "If the trial court finds that a parent is employed to full capacity, then the trial court must determine the gross income of that parent . . . ." *Sifred* at ¶ 14. R.C. 3119.01(C)(12), in its relevant part, broadly defines "gross income" as including

> the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses . . . ; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; . . . spousal support actually received; and all other sources of income.

R.C. 3119.01(C)(12) (2021) (current version at R.C. 3119.01(C)(13) (2024)).

**{¶51}** On appeal, Jameison commences his argument by contending that "the trial court erroneously 'impute[ed]' [him] at an income of 'at least $55,000' for purposes of child support without making an express finding of voluntary unemployment or underemployment, and when no evidence could support such a finding." (Appellant's Brief at 28, quoting Doc. No. 104). However, the trial court did not impute income because Jameison was voluntarily underemployed. Instead, the trial court determined that Jameison was "not truthful and forthcoming about his income" and determined his gross income in accordance with R.C. 3119.01(C)(12). (Doc. No. 104). *Compare Siferd* at ¶ 17 (analyzing that "the trial court proceeded to calculate Ronald's gross income" under R.C. 3119.01(C)(12) because it "determined that Ronald is self-employed and was not underemployed"). Therefore, we will address whether the trial court abused its discretion by calculating Jameison's gross income for child support purposes.

**{¶52}** "When determining a parent's income for purposes of calculating child support, the trial court must verify the income 'with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns.'" *Neu v. Neu*, 2013-Ohio-221, ¶ 12 (3d Dist.), quoting R.C. 3119.05(A). "While federal and state tax documents provide a proper starting point, they are not the sole factor for the trial court to

consider when determining a parent's income." *Id.* "Often, income for child support purposes is not equivalent to the parent's taxable income." *Id.* "This is because 'the theory behind determining income for child support purposes is different from that of stating income for tax purposes.'" *In re K.P.*, 2012-Ohio-1094, ¶ 12 (2d Dist.), quoting *Offenberg v. Offenberg*, 2003-Ohio-269, ¶ 29 (8th Dist.). That is, "[t]he theory behind determining income for child-support purposes is to '"determin[e] how much [of the parents'] money is actually available for child support purposes."'" *Id.*, quoting *Marcus v. Marcus*, 1999 WL 960772, *5 (2d Dist. July 30, 1999), quoting *Helfrich v. Helfrich*, 1996 WL 532185, *3 (10th Dist. Sept. 17, 1996).

{¶53} Accordingly, income is included "whether or not the income is taxable." R.C. 3119.01(C)(12) (2021) (current version at R.C. 3119.01(C)(13) (2024)). "'"This recognize[s] the economic reality that all money earned by a parent, irrespective of its taxability, is in fact income to that parent."'" *In re K.P.* at ¶ 12, quoting *Offenberg* at ¶ 29, quoting *Helfrich* at *3. "Consequently, when determining a parent's income, the trial court must beware of '"the possible manipulation of the numbers contained on the return to conceal income which, as a practical matter, may be available for child support purposes."'" *Id.*, quoting *In re Harris*, 2006-Ohio-3649, ¶ 50 (2d Dist.), quoting *Offenberg* at ¶ 30.

**{¶54}** Therefore, "[w]hen determining the gross income of a self-employed parent, the trial court must deduct ordinary and necessary expenses from the parent's gross receipts." *Id.* at ¶ 14. Under R.C. 3119.01(C)(15)(a), "ordinary and necessary expenses" are "actual cash items expended by the parent or the parent's business [including] depreciation expenses of business equipment as shown on the books of a business entity." However, R.C. 3119.01(C)(15)(b) excludes "depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business" as ordinary and necessary expenses.

**{¶55}** "Furthermore, '[a] party claiming a business expense has the burden of providing suitable documentation to establish the expense. A trial court is not required to blindly accept all of the expenses an appellant claims to have deducted in his tax returns as ordinary and necessary expenses incurred in generating gross receipts.'" *Huelskamp v. Huelskamp*, 2009-Ohio-6864, ¶ 43 (3d Dist.), quoting *Ockunzzi v. Ockunzzi*, 2006-Ohio-5741, ¶ 53 (8th Dist.). "Rather, the obligor has the duty to ascertain which items are exempt from inclusion as gross income as ordinary and necessary business expenses under [R.C. 3119.01(C)(15)(a)] and demonstrate the expenses through 'independent evidence' beyond the tax return." *Neu*, 2013-Ohio-221, at ¶ 19 (3d Dist.). "When evidence to support a claim for depreciation expenses is absent from the record, it is not an abuse of discretion for a trial court to disallow those expenses and include them as income." *Huelskamp* at ¶ 43.

{¶56} In this case, the trial court's magistrate determined that Jameison's testimony regarding his income was not credible and that a reasonable income of at least $55,000.00 should be attributed to him. Reaching this determination, the trial court's magistrate noted that Jameison's bank records revealed substantial personal expenses, including vacations and "payments of $55,0000.00 to his attorney in a little over a year," which were inconsistent with his reported income, suggesting a higher income level than reported. (Doc. No. 99). Indeed, the trial court's magistrate summarized that Jameison's tax returns for 2019, 2020, and 2021 reflected income of $15,991.00, $7,947.00, and $15,576.00, respectively. The trial court's magistrate further noted that, notwithstanding the income reflected on his tax returns, Jameison's affidavit of income for 2019, 2020, and 2021 reflected income of $38,185.00, $7,947.00, and $3,026.00, respectively.

{¶57} In its independent review of the magistrate's decision (as well as the magistrate's decisions following the prior relevant hearings), the trial court concluded that "[i]t is obvious that [Jameison] earns considerably more than he claims" and that the magistrate "was <u>generous</u> in only imputing $55,000.00 to [Jameison], as certainly [he] earned more money than what he paid his attorney." (Emphasis in original.) (Doc. No. 104).

{¶58} Based on our review of the record, we conclude that the trial court did not abuse its discretion by calculating Jameison's gross income at $55,000.00 per year for child support purposes. Indeed, contrary to Jameison's argument on appeal

that it was Holly's burden of proving that he "voluntarily reduced his income from self-employment of $26,280.50," Jameison had the burden of verifying his income. *See In re K.P.*, 2012-Ohio-1094, at ¶ 11 (asserting that "the parent has the burden to verify his income"). Here, Jameison did not submit credible documentary evidence to the trial court to substantiate his claimed gross income. Rather, the only documentary evidence that Jameison presented to the trial court was his 2019, 2020, and 2021 tax returns (and affidavit of income), a self-generated (single page) profit and loss spreadsheet for his business, and his bank statements (without connecting any expense to a job or project). *Compare Huelskamp*, 2009-Ohio-6864, at ¶ 45 (3d Dist.) (analyzing that "Timothy has not provided any documentation that any of this money was actually paid out, nor does he explain how his business is able to take a depreciation deduction under the IRS regulations for assets that it claims it does not own" and that "[t]here was no evidence before the court that would indicate this money was actually expended as an ordinary and necessary business expense").

{¶59} We agree with the trial court's evaluation that Jameison's reported income was not forthcoming. Importantly, Jameison was provided with ample opportunity to substantiate his income. That Jameison chose not to provide decipherable documentation, either due to a failure to maintain accurate business or personal financial records or due to significant commingling of his personal and business finances, is not an error for this court to review or correct on appeal. Thus, taking into account the evidence Jameison provided to the trial court, we agree with

the trial court's assessment of the magistrate's determination of Jameison's gross income, amounting to $55,000.00 annually for child support purposes, was generous.

{¶60} Consequently, the trial court's calculation of Jameison's gross income of $55,000.00 for child support purposes in response to the confusing and incomplete records that he provided to the trial court is not arbitrary, unreasonable, or unconscionable. *See Siferd*, 2017-Ohio-8624, at ¶ 22 (3d Dist.) (concluding that, "[i]n response to these confusing and incomplete records, the magistrate relied on the evidence she determined to be the most accurate indicator of Ronald's gross income"). As a result, we conclude that the trial court did not abuse its discretion by reaching its determination.

{¶61} Jameison's second assignment of error is overruled.

**Third Assignment of Error**

**The Trial Court Erred By Violating The Parties' Stipulations, Refusing To Order An Equal Or Equitable Division Of Assets, And Ordering Father To Make An Equalization Payment To Mother (Instead Of Mother Paying Father). (R. 99, 104, 107.)**

{¶62} In his third assignment of error, Jameison argues that the trial court erred in its distribution of the parties' assets. Specifically, Jameison contends that the trial court erred by ordering him to pay Holly $3,888.50 to equalize the distribution of marital property.

*Standard of Review*

**{¶63}** "A trial court has broad discretion in the allocation of marital assets and debt, and an appellate court will not disturb a trial court's judgment absent an abuse of discretion." *Moon v. Moon*, 2024-Ohio-2428, ¶ 5 (10th Dist.). *See also Choi v. Choi*, 2018-Ohio-725, ¶ 21 (9th Dist.) ("Additionally, the trial court's determination regarding whether one spouse has engaged in financial misconduct is reviewed for an abuse of discretion."). Again, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶64}** "In divorce proceedings, the trial court must classify property as marital or separate, determine the value of the property, and divide the marital and separate property between the spouses." *Moon* at ¶ 5, citing R.C. 3105.171. "Marital debt must also be divided." *Id.* "The marital property and debt must be divided equally or, if an equal division is inequitable, equitably." *Id.*, citing R.C. 3105.171(B).

**{¶65}** "Another consideration in the division of marital property is financial misconduct by a spouse." *Choi* at ¶ 22. "When a spouse engages in financial misconduct, the statute provides the trial court with discretion to 'compensate the offended spouse with a distributive award or with a greater award of marital property.'" *Id.*, quoting R.C. 3105.171(E)(4).

**{¶66}** "R.C. 3105.171(E)(4) defines financial misconduct as including "'the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets.'" *Id.* at ¶ 23, quoting R.C. 3105.171(E)(4). "As applied to the division of marital property, 'financial misconduct necessarily implicates wrongdoing such as one spouse's [intentional] interference with the other's property rights or the offending spouse's profiting from the misconduct." *Id.*, quoting *Tustin v. Tustin*, 2015-Ohio-3454, ¶ 44 (9th Dist.). "Thus, '[f]inancial misconduct requires more than dishonest behavior.'" *Id.*, quoting *Bucalo v. Bucalo*, 2005-Ohio-6319, ¶ 30 (9th Dist.). "It also 'requires 'some element of wrongful intent or scienter[.]''" *Id.*, quoting *Harvilla v. Havrilla*, 2014-Ohio-2747, ¶ 47 (9th Dist.), quoting *Orwick v. Orwick*, 2005-Ohio-5055, ¶ 25 (7th Dist.).

**{¶67}** Wrongful scienter may be established by examining the timing of the alleged financial misconduct in relation to the filing of the divorce proceedings or the period of separation. *Id.* at ¶ 24. "'[I]f the time frame of the alleged misconduct does not establish scienter, there must be some other evidence that does establish it.'" *Id.*, quoting *Orwick* at ¶ 28. In other words, "[i]f the alleged financial misconduct occurred years prior to the initiation of the divorce proceedings, then there must be proof of wrongful intent when the misconduct occurred." *Id.*

**{¶68}** "The burden of proving financial misconduct rests with the complaining spouse." *Id.* at ¶ 25. "'An allegation of financial misconduct,

unsupported by evidence of wrongdoing, will not support a dissipation award.'" *Id.*, quoting *Detlef v. Detlef*, 2001 WL 1590095, *5 (6th Dist. Dec. 14, 2001).

{¶69} In the October 24, 2024 magistrate's decision, the trial court's magistrate allocated the assets designated to each party on the stipulated balance sheet. Determining the proper distribution of the parties' assets, the trial court's magistrate determined that the sale of the firearms and the damage to the house "were crossed out on the balance sheet before being submitted as an exhibit, [and were] not included [in the magistrate's allocation because they] were removed from consideration by the parties." (Doc. No. 99). Notwithstanding that finding, the trial court's magistrate found that "each of [those] items occurred significantly long ago, so that they are no longer current assets nor liabilities of the parties." (*Id.*). Consequently, the trial court's magistrate ordered Jameison to pay Holly "the sum of $3,888.50" "[t]o assure an equal division . . . ." (*Id.*).

{¶70} In its independent review of the magistrate's decision, the trial court rejected Jameison's objection to the magistrate's decision pertaining to asset allocation because "[a]n equal division of the values and the distributions *stipulated* to by the parties results in a balancing payment of $3,888.51 from [Jameison] to [Holly]." (Emphasis in original.) (Doc. No. 104). Importantly, the trial court found that "[t]he parties presented to the Court an agreed balance sheet," which "had several items 'crossed out'" and that "[t]he Magistrate prepared a Court Balance Sheet, using the exact figures and distributions on the agreed balance sheet." (*Id.*).

In sum, the trial court determined that "[t]he magistrate did not abuse his discretion in not including as marital assets either the money from the sale of the firearms, nor the alleged damage to a piece of real estate" because those "incidences . . . occurred before the filing of the complaint for divorce . . . ." (*Id.*).

{¶71} On appeal, Jameison argues that the trial court erred by omitting certain items from the parties' agreed-upon balance sheet, resulting in an imbalance. Specifically, Jameison contends that, "[r]ather than credit [Holly] with the $1,000 she admittedly received from the unauthorized sale of [Jameison's] firearms . . . or compensate [him] for the $5,000 in damage she caused to the house, the trial court erroneously excluded 'these items' from the parties [sic] stipulated balance sheet." (Appellant's Brief at 33). That is, he argues that "the magistrate [erroneously] interpreted the 'crossed out' assets as if they 'were removed from consideration by the parties'" when determining that he received $3,888.50 more than Holly. (Appellant's Brief at 32, quoting Doc. No. 99). Instead, he contends that the magistrate should have considered the evidence that Holly admitted that she pawned his firearms and that she damaged the residence since the magistrate acknowledged at the hearing that "counsel . . . provided [him] with a . . . stipulated balance sheet" but that "[c]ertain things are crossed out . . . with a question mark and [he would] take evidence on those either as to the value of as to the distribution." (July 6, 2023 Tr. at 160).

**{¶72}** To begin with, to the extent Jameison contends that the trial court violated the stipulations regarding the identification, valuation, and division of the marital estate, Jameison's argument is specious. Critically, the parties stipulated to the balance sheet (Joint Exhibit I) with the "crossed out" line items and requested that the court determine the allocation of those "crossed out" items. Rendering its decision on that property, the trial court determined that the disputed property should not be considered for distribution, as the sale of the firearms and the destruction of the residence occurred prior to the filing of the divorce complaint.

**{¶73}** Based on our review of the record, we conclude that the trial court did not abuse its discretion by ordering Jameison to pay Holly $3,888.50 to equalize the distribution of marital property because Jameison did not satisfy his burden of proving that Holly engaged in financial misconduct. Indeed, Holly admitted that she damaged the stained-glass window when she was moving out of the residence in June 2019 and that she sold the firearms in May 2021. Holly filed her complaint for divorce on July 22, 2022. Consequently, the timing of the sale of the firearms and the destruction of the property does not establish any wrongful intent on Holly's part.

**{¶74}** Our review of the record also reveals that Jameison did not prove that Holly committed any financial misconduct with wrongful intent. Importantly, Holly testified that she did not "intend to maliciously damage property. That was accidental." (May 16, 2023 Tr. at 110). Holly further testified that she sold the

firearms "because [she] was very desperate to feed [K.S.], and Jameison refused to help [her] out in any way." (*Id.* at 108). "[I]t is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." *Greve v. Greve*, 1997 WL 794508, *2 (3d Dist. Dec. 30, 1997). Consequently, we conclude that the trial court did not abuse its discretion by ordering Jameison to pay Holly $3,888.50 to equalize the distribution of marital property.

{¶75} Jameison's third assignment of error is overruled.

{¶76} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WALDICK, P.J. and MILLER, J., concur.**

**/hls**